645 A.2d 851

Robert FRANKS

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellant.

Superior Court of Pennsylvania.

Argued June 23, 1994.

Filed July 28, 1994.

Vatche Kaloustian, Philadelphia, for appellant.

George D. Walker, Jr., New Castle, DE, for appellee.

Before ROWLEY, P.J., and CAVANAUGH and TAMILIA, JJ.

PER CURIAM:

Southeastern Pennsylvania Transportation Authority (SEPTA) appeals from the September 23, 1993 Order denying its petition to open/strike the judgment entered in favor of the appellee, Robert Franks, as a consequence of a 1987 workers' compensation claim petition.

Appellee, a cashier for SEPTA, was allegedly injured on the job while he was being arrested by SEPTA detectives for receiving stolen property and theft in connection with subway fares. While believing appellee did sustain injuries, the referee nevertheless denied benefits finding claimant's injuries were not compensable as a matter of law because they occurred while he was being arrested on charges for which he was later convicted. The Workers' Compensation Appeal Board affirmed this decision but Commonwealth Court, on November 8, 1991, reversed, finding SEPTA had failed to establish a causal connection between claimant's violations of the law and his injuries. *Franks v. Workmen's Compensation Appeal Board (SEPTA)*, 148 Pa.Cmwlth. 25, 613 A.2d 36 (1991). SEPTA's petition for reargument and reconsideration

was denied by Commonwealth Court, *Franks v. Workers' Compensation Appeal Board (SEPTA)*, (No. 2421 C.D.1990, filed March 9, 1992), as was its petition for allocatur to the Pennsylvania Supreme Court, *Franks v. Workers' Compensation Appeal Board (SEPTA)*, (No. 87 E.D.Alloc. Docket 1992, filed October 5, 1992). On November 4, 1992, Franks entered judgment against SEPTA in the Court of Common Pleas, based on the 1991 Opinion of the Commonwealth Court which reversed the Appeal Board's decision denying benefits. SEPTA's petition to strike the judgment was granted by the Court of Common Pleas on March 25, 1993 because prior to entering judgment, claimant had not secured an Order from the referee containing a computation of benefits owed. After obtaining an Order from the referee,[1] Franks again entered judgment[2] against SEPTA on June 8, 1993. Appellant avers this step was necessary because SEPTA allegedly refused to pay the award as directed. On September 3, 1993, the Court of Common Pleas denied SEPTA's petition to open/strike the June 8th judgment on the merits. SEPTA appealed to Commonwealth Court which, on October 29, 1993, transferred the case to this Court on November 30, 1993. For the reasons which follow, we refuse jurisdiction and transfer this matter back to Commonwealth Court.[3]

Appellant raises three issues, at least one of which questions

1. The record indicates the referee again failed to perform a computation of benefits owed in his Order directing SEPTA to pay penalties and costs.

2. Because we have not been made privy to the underlying workers' compensation record, we are unable to state from where the $158,566 dollar figure listed in the judgment arose.

3. After this matter was transferred to this Court on November 30, 1993, the Commonwealth Court was still entertaining an appeal on the merits filed by SEPTA. On March 9, 1994, Commonwealth Court affirmed in part and vacated in part a July 20, 1993 Order, issued as a consequence of a penalty petition, directing SEPTA to pay penalties plus statutory interest on all deferred compensation and costs of litigation owed the claimant. In his memorandum ruling on SEPTA's appeal, Senior Judge Charles Lord voiced his concern that the court was still left with the unanswered question of what is the amount of benefits owed by SEPTA to claimant.

the validity of the underlying judgment.[4] For this reason alone, we find jurisdiction does not lie with this Court. This case has bounced through the administrative agency hierarchy of litigation since 1987 and several well-reasoned memoranda have been penned by our learned colleagues in Commonwealth Court addressing issues peculiar to the Workers' Compensation Act; issues we are not in a position to address or challenge.

A second issue raised by appellant addresses the propriety of the Court of Common Pleas' Order striking the original November 4, 1992 judgment and thereafter entering the second June 8, 1993 judgment. Appellant argues the second judgment is barred by res judicata. Again, this is a matter not properly before this Court. The Court of Common Pleas made its decision based on workers' compensation procedural law with which it was presented. This Court does not as a matter of course deal with the inner workings of the workers' compensation appeal procedure and is therefore not in a position to rule on the propriety of the decision finding the original judgment to have been improvidently entered.[5]

Reasoning further, as mentioned in footnote 3, this case is still pending before Commonwealth Court; specifically, with regard to SEPTA's appeal from the Workers' Compensation Appeal Board's decision affirming the referee's Order directing SEPTA to pay penalties and statutory interest on all deferred compensation and costs of litigation. In his Memorandum, the Honorable Charles A. Lord stated: "At this point, we are still left with the unanswered question that has caused much of the problem in this case. That question is the amount of benefits owed Franks." *SEPTA v. Workers' Compensation Appeal Board (Franks)*, No. 1854 C.D.1993, unpublished memorandum filed March 9, 1994. Clearly, the matter

4. Appellant contends judgment cannot be entered in claimant's favor without an award for total and permanent disability which clearly states the terms of payment.

5. Further, as an agency of the Commonwealth of Pennsylvania and an instrument of the government created through legislative mandate, it follows that lawsuits to which SEPTA is a party are properly entertained by Commonwealth Court.

of the amount of compensation owed to claimant is an issue which must be resolved by the Workers' Compensation referee, and for this Court to rule either affirming or denying the motion to strike or open the $158,566 judgment would unquestionably complicate further an already procedurally complex case. (See *Newman v. Thorn*, 359 Pa.Super. 274, 518 A.2d 1231 (1986) (When considering whether to retain jurisdiction, the interests of the parties and matters of judicial economy must be balanced against other factors including 1) whether retention will disrupt the legislatively ordained division of labor between the intermediate appellate courts; and 2) whether there is a possibility of establishing two conflicting lines of authority on a subject.))

Finally, assuming arguendo Franks has a valid judgment, logic dictates the court which has jurisdiction when the verdict is entered must be held responsible for enforcing the judgment once taken.

For these reasons, we transfer this case to Commonwealth Court and relinquish jurisdiction.

Case transferred to Commonwealth Court.

Jurisdiction relinquished.

645 A.2d 853

**COMMONWEALTH of Pennsylvania**

v.

**Aaron WHEELER, Appellant.**

Superior Court of Pennsylvania.

Submitted June 6, 1994.

Filed July 28, 1994.

268

Jay S. Gottlieb, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before ROWLEY, President Judge, and KELLY and MONTGOMERY, JJ.

ROWLEY, President Judge.

As a result of his participation in a robbery and murder occurring at a Philadelphia convenience store, Aaron Wheeler (hereinafter "appellant") was found guilty by a jury of second degree murder, robbery, criminal conspiracy and possession of an instrument of crime; he has filed the instant appeal from his judgment of sentence. On appeal, appellant claims that he is entitled to a new trial for the following reasons: (1) because the Commonwealth peremptorily struck a disproportionate number of black jurors during jury selection; (2) because the Commonwealth used appellant's name while cross-examining appellant's co-defendant regarding the co-defendant's out-of-court statement; (3) because the Commonwealth made reference to "a second murder" while questioning appellant's alibi witness; and finally, (4) because the Commonwealth's closing remarks were "calculated to move [the jury] from their position of sworn impartiality." Having thoroughly examined these claims, we find them all to be completely without merit and we therefore affirm.

The facts relative to this appeal were accurately and succinctly stated by the trial court, as follows:

"On October 31, 1991, Jai Ho Lee, the victim, was working as the manager of the Stop and Go Deli at Broad and Susquehanna Streets in Philadelphia[, Pennsylvania]. At about 6:39 p.m. Jesse Bond and [appellant], the defendants, entered the store and Bond pointed a gun at [an] employee, Yang–Jin Kim, telling him to 'open the register and give up the money.' At that point [in time,] Jai Ho Lee walked to the cash register, which was open, shut the [cash] drawer, locked it, and threw the key on the floor. Immediately

after [Lee] threw the keys [to] the floor, Bond, standing about four feet from him, shot [Lee] in the chest, causing his death. [Appellant] entered the store with Bond, served as a look-out [during the robbery and murder] and fled [from the store] with Bond.

The case was tried before th[e] [trial] court from February 2 to February 8, 1993. [Appellant] was convicted of Murder in the Second Degree, Robbery, Possessing and Instrument of a Crime and Conspiracy."

(Trial Court Opinion, 10/5/93, p. 1–2). "Post–Sentence Motions were heard and denied on July 28, 1993. This [timely] appeal followed." *Id.*

■ Appellant's first claim on appeal is that he was not tried by a fair and impartial jury because the Commonwealth used its peremptory challenges in a racially discriminatory manner in violation of the United States Supreme Court's holding in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In reviewing this claim, "we are mindful that an appellate court will reverse a trial court's finding of no discrimination only if that finding is clearly erroneous." *Commonwealth v. Correa*, 423 Pa.Super. 57, 65, 620 A.2d 497, 501 (1993).

■ We observe that:

"*Batson* requires that a criminal defendant's jury be selected without purposeful discrimination. Once a defendant presents a *prima facie* case that such purposeful discrimination has occurred, the burden shifts to the prosecution to supply a legitimate, race-neutral reason for striking a potential juror. [citations omitted]. The Commonwealth does not meet its burden by stating baldly that its actions involved no racial motive or were done in good faith. [citations omitted]."

*Commonwealth v. Smulsky*, 415 Pa.Super. 461, 465, 609 A.2d 843, 844–845 (1992), *appeal denied*, 532 Pa. 663, 616 A.2d 984 (1992). Further:

"[i]n order to establish a *prima facie* case of purposeful discrimination after [the United States Supreme Court's

decision in] *Powers* [*v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)], a defendant need only show the circumstances of his case raise an inference that the prosecutor used his peremptory challenges to exclude veniremen from the petit jury on account of race."

*Commonwealth v. Correa, supra.* at 65, 620 A.2d at 501.

"Appellant's presentation of a *prima facie* case is unchallenged in this appeal. Therefore, we must carefully examine the Commonwealth's explanations for excluding black persons to determine if there is support for the trial court's conclusion that those explanations were, in fact, valid and nondiscriminatory. The primary responsibility for assessing the validity of the Commonwealth's explanations is vested in the trial court, [citation omitted], for

> 'a finding of intentional discrimination is a finding of fact' entitled to appropriate deference by a reviewing court. Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference."

*Commonwealth v. Smulsky, supra.* at 467, 609 A.2d at 845, *citing Batson v. Kentucky, supra.* at 98 n. 21, 106 S.Ct. at 1724 n. 21, 90 L.Ed.2d at 89 n. 21.

 The Commonwealth's first and second peremptory challenges were against two black venire persons, Kenneth Stewart and Effie Hall. The trial court concluded, and we concur, that these strikes were racially neutral on their face and thus, no reasons were given by the Commonwealth on the record with regard to these strikes. Mr. Stewart was struck because he "absolutely" had qualms about sitting in judgment of another person and because he felt that police officers were not always worthy of belief, while Ms. Hall was challenged because her brother had been tried on murder charges. The Commonwealth's third, fourth and fifth peremptory challenges were made to white jurors.

 The next black juror who was peremptorily challenged by the Commonwealth was Kim Clark. The prosecutor ex-

plained that Ms. Clark was challenged because she seemed uninterested in participating in the proceedings. Where a prosecutor has an impression of a juror as disingenuous, a legitimate, race-neutral reason for the peremptory challenge exists. *Commonwealth v. Smulsky, supra.* at 467, 609 A.2d at 846. Lottie Richardson was the seventh peremptory strike used by the Commonwealth. The trial court did not ask the prosecution to justify this strike because the reason therefor was apparent from the record; Ms. Richardson had a relative who had been arrested and charged with conspiracy.

■ Geraldine McClendon was the eighth person excluded from the jury by the Commonwealth and the prosecutor explained that she was struck because she equivocated with regard to her ability to impose the death penalty. This is clearly a race-neutral reason for striking a potential juror. *Commonwealth v. Hardcastle*, 519 Pa. 236, 546 A.2d 1101 (1988), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). The Commonwealth's ninth and tenth peremptory challenges were used respectively against Mary A. Thompson and Betty R. Williams. We agree with the trial court that the reasons for these challenges are apparent on the face of the record because Ms. Thompson's ex-boyfriend had committed a murder and Ms. Williams' nephew has been charged with both murder and theft.

■ Following the Commonwealth's use of a peremptory strike against a hispanic juror, it challenged two black venire persons, Brian Reed and William Williams. The prosecutor stated that he struck both of the jurors because they equivocated on the death penalty issue. As noted above, equivocation with regard to one's ability to follow the court's instructions on the law and impose the death penalty in an appropriate case is a legitimate, race-neutral reason for exercising a peremptory challenge against a potential juror. *Commonwealth v. Hardcastle, supra*, at 244, 546 A.2d at 1105.

■ The fourteenth and fifteenth peremptory strikes by the Commonwealth were against Nicole Gilyard and Joyce Hinton, respectively. Ms. Gilyard was struck because she had

274

a close friend who was awaiting trial on the charge of robbery, which is clearly a race-neutral reason for striking a potential juror, *Commonwealth v. Hardcastle, supra.* at 245, 546 A.2d at 1105, while Ms. Hinton was challenged because she became extremely incensed when the Commonwealth asked her if she was sure that she could impose the death penalty in an appropriate case. The trial court, who observed the demeanor of Ms. Hinton first-hand, immediately accepted the prosecutor's explanation as race-neutral, as do we.

Having carefully reviewed the record, and the relevant legal authorities, we conclude that the reasons given by the Commonwealth for peremptorily challenging the above-noted venire persons were sufficiently race-neutral for the trial court to conclude that they were legitimate, rather than pretextual. Appellant is not entitled to a new trial based on his allegation that the Commonwealth improperly engaged in racial discrimination while selecting his jury.

 Appellant's second assignment of error concerns the Commonwealth's cross-examination of appellant's co-defendant, Jesse Bond. Appellant contends that he is entitled to a new trial, pursuant to the United States Supreme Court's ruling in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), because in cross-examining appellant's co-defendant, Jeese Bond, the prosecutor made reference to Bond's out-of-court statement naming appellant as his accomplice in the events of October 31, 1991. "In *Bruton,* [*supra.*], the United States Supreme Court held that a defendant is deprived of his rights under the Confrontation Clause of the Sixth Amendment when his *non-testifying* co-defendant's confession *naming him* as a participant in the crime is introduced at their joint trial." *Commonwealth v. Wharton,* 530 Pa. 127, 139, 607 A.2d 710, 716 (1991) (emphasis supplied).

The Commonwealth argues that its line of questioning in cross-examining Bond was not violative of *Bruton* because co-defendant Bond testified at trial that his statement had been concocted by the police and that he had only signed it because he was "frightened." (Notes of Testimony, 2/5/93, p. 750–763).

The Commonwealth cites *Nelson v. O'Neil,* 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971) in support of its argument in this regard.

> "In *Nelson,* [*supra.*], the United States Supreme Court held that where a co-defendant in state court took the stand at a joint trial in his own defense, and denied making an alleged out-of-court statement implicating [the] defendant, and proceeded to testify favorably to defendant concerning the underlying facts, the defendant was denied no rights under the Sixth or Fourteenth Amendments...."

*Commonwealth v. Baker,* 511 Pa. 1, 15, 511 A.2d 777, 785 (1986). We agree with the Commonwealth that no *Bruton* violation occurred in this case[1].

1. Furthermore, as noted by the trial court, even assuming that the rule enunciated in *Bruton* was violated by the prosecution's reference to Bond's unredacted statement:

 "A violation of the *Bruton* rule does not automatically require reversal of a criminal conviction. *Commonwealth v. Wharton,* 530 Pa. 127, 607 A.2d 710 (1992). There need be no grant of a new trial where the prejudicial effect of the co-defendant's admission is so insignificant by comparison to the evidence against him that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error. *Id.* at 143–144, 607 A.2d at 718. A determination that such use was harmless must be reached by balancing the prejudicial effect of the statement with the quality of the evidence establishing defendant's guilt. *Id.*

 Viewed in the context of the other evidence against him, the mention of [appellant's] name in the cross-examination of [co-]defendant Bond implicating [appellant] in the crime did not constitute prejudicial error. The evidence against [appellant] which had already been presented in the prosecution's case in chief was overwhelming. His confession described his participation in the planning and execution of the crime in detail and two eyewitnesses were able to identify him as the person who had participated in the robbery and killing with [co-]defendant Bond.

 Moreover, immediately following the mention of [appellant's] name, and again in its final instructions to the jury, the court cautioned them that 'the statement of one defendant may not be used against the other defendant in any way ... The two defendants are being tried at the same time, but the evidence against each must be separated. In order to be a fair trial to both defendants, the evidence against each must be considered separately, and I instruct you that you may not consider the evidence of the statement of one defendant against the other. And further, as I have told you before, and will probably tell you again, the questions are not evidence. It is only the answers which are evidence, members of the jury.' "

(Trial Court Opinion, 10/5/93, p. 4). Thus, even if there had been a *Bruton* violation, which we conclude there was not, appellant would not be entitled to a new trial on this basis.