**Beth WILSON, Appellant**

v.

**TRAVELERS CASUALTY AND SURETY COMPANY (Employer's Insurance Company) and Honeywell, Inc. (successor in interest to Allied Signal, Inc., Employer).**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 13, 2013.

Decided Dec. 3, 2013.

Reargument Denied Feb. 4, 2014.

Robert J. Murphy, Philadelphia, for appellant.

Jessica M. Heinz, Philadelphia, for appellees.

BEFORE: McGINLEY, Judge, BROBSON, Judge, and COVEY, Judge.

OPINION BY Judge McGINLEY.

Beth Wilson (Claimant) appeals from two orders of the Court of Common Pleas of Montgomery County (common pleas court) which vacated and struck down two judgments that were entered by the Montgomery County Prothonotary in favor of Claimant pursuant to Section 428 of the Workers' Compensation Act,[1] 77 P.S. § 921 (pertaining to judgment and execution for failure to pay benefits due).[2]

1. Act of June 2, 1915, P.L. 736, *as amended.* Section 428 of the Act, 77 P.S. §§ 921, 951, and 971, was added by section 6 of the Act of June 26, 1919, P.L. 642.

2. Section 428 of the Act, 77 P.S. § 921, provides for judgment upon default in compensation payments:

Whenever the employer, who has accepted and complied with the provisions of section 305, shall be in default in compensation payments for 30 days or more, the employe or dependents entitled to compensation thereunder may file a certified copy of the agreement and the order of the department approving the same or of the award or order with the prothonotary of the court of common pleas of any county, and the prothonotary shall enter the entire balance payable under the agreement, award or order to be payable to the employe or his dependents, as a judgment against the employer or insurer liable under such agreement or award. Where the compensation so payable is for a total and permanent disability, the judgment shall be in the amount of $30,000 less such amount as the employer shall have actually paid pursuant to such agreement or award. . . .

A judgment entered pursuant to Section 428 of the Act, 77 P.S. § 921, will only be

At all times relevant to this appeal, Claimant was an adult female who was severely mentally retarded due to Down's syndrome.

This controversy began thirty years ago when Claimant's father, James Wilson, (hereinafter "Father") filed a Claim Petition at Bureau Claim No. 777631, in which he alleged that as of September 15, 1983, he was totally disabled from lung disease and asbestosis caused by his exposure to asbestos during the course of his employment with Employer from 1950 to 1981.[3]

Father died on September 29, 1990, (before his Claim Petition was resolved). Up until the time of Father's death, Claimant and her Mother had lived with Father. After Father died, Claimant continued to live with Mother for a short period, but because Mother was blind, infirm and unable to care for Claimant, Claimant was moved to a diagnostic group home.

Mother filed a Fatal Claim Petition on January 7, 1991, at Bureau Claim No. 609835, and alleged that Father's death was caused by his occupational disease.[4] After fifteen years of litigation, on May 16,

---

lifted if the employer establishes there was no order granting compensation, that 30 days had not passed since the order fixing payment, a supersedeas was granted, or that the amount owed has been paid. *Clayton v. City of Philadelphia*, 910 A.2d 93 (Pa.Cmwlth. 2006); *Horner v. C.S. Myers & Sons, Inc.*, 721 A.2d 394 (Pa.Cmwlth.1998); *Sober v. Pennsylvania Manufacturers Association*, 220 Pa.Super. 22, 276 A.2d 322 (1971).

3. On October 21, 1983, while the Claim Petition was pending, Father and Mother commenced a third-party action in the Philadelphia County Court of Common Pleas against Owen–Illinois, Inc., claiming damages for all Father's injuries, harm and damages during his lifetime and Mother's loss of consortium. This action resulted in jury verdicts for Father and Mother in 1992. Ultimately, the Claim Petition was dismissed. As discussed more thoroughly below, the parties continue to dispute whether Employer is entitled to subrogation against this same Owens–Illinois verdict for the "fatal benefits" that were paid to Mother by Employer/Insurer.

4. In 1998, while the Claim Petition and Fatal Claim Petition were pending, Employer filed a Review Petition at Bureau Claim No. 777631 and alleged that Father had entered into a third-party settlement and refused to disclose specifics of the case as required by Section 319 of the Act, 77 P.S. § 671, regarding subrogation. The WCJ eventually denied and dismissed Father's Claim Petition because Father's counsel refused to disclose information concerning the third-party action for "lifetime injuries" that arose from Father's occupational disease. The WCJ denied

Father's lifetime claim because without that information she could not determine the exact amount Father was owed for his "lifetime injuries" (which, of course, were separate from the fatal claim benefits). The Board affirmed.

On appeal to this Court, Mother argued that Employer was not entitled to assert subrogation rights under Section 319 of the Act, 77 P.S. § 671, because Employer had "not yet" made any payments for "lifetime injuries" pursuant to the Claim Petition. This Court rejected this argument because under Section 319 of the Act, 77 P.S. § 671, an employer has a right to subrogation against the third party to the extent compensation is owing but not yet paid. Nevertheless, because Father's *lifetime claim* for compensation was denied (therefore, Employer/Insurer never paid benefits for lifetime injuries), *at that point* Employer/Insurer's right of subrogation was conclusively terminated, as well. *See Ann Wilson and James Wilson, Deceased v. Traveler's Insurance Company and Allied Signal, Inc.*, 2008 WL 9406439 (Pa.Cmwlth., Nos. 893 C.D 2007, 989 C.D.2007, 2297 C.D.2007, 2298 C.D.2007, filed July 8, 2008).

Employer later claimed it was entitled to subrogation against this same Owens–Illinois verdict for the "fatal benefits" that were paid to Mother by Employer/Insurer. That has been the subject of extensive litigation that still remains unresolved. In this appeal, Employer does not assert that *Claimant's* benefits under the Act are subject to subrogation. Rather, Employer's position is that *Claimant was never awarded fatal benefits; only Mother was awarded fatal benefits* which were computed based on a widow and one child.

2006, Workers' Compensation Judge Susan Kelley (WCJ Kelley) granted the Fatal Claim Petition and awarded weekly death benefits in the amount of $302.40, which represented sixty-percent of Father's average weekly wage, pursuant to the Schedule of Beneficiaries set forth at Section 307 of the Workers' Compensation Act, 77 P.S. §§ 561, 562, for a widow and one dependent child.

The fatal claim award included an award for $517,958 (approximately 811 weeks between 1991 when the Fatal Claim Petition was filed and approximately May of 2007 at $302.40 per week), plus fifty percent penalty and attorney's fees of twenty percent.

Based upon the credited testimony of Claimant's sister, Sheila Wilson, WCJ Kelley found that although Claimant was over the age of eighteen, Claimant was dependent upon Father at the time of his death as the result of her disability. WCJ Kelley specifically found that "Anne Wilson [Mother] and Beth Wilson [Claimant] were dependent on Decedent [Father] at the time of his death." WCJ Decision, May 16, 2006, Finding of Fact No. 35 at p. 7. The Board affirmed.

On May 2, 2008, Employer petitioned this Court for review and argued, *inter alia*, that the evidence was insufficient to establish Claimant's dependency on Father because the finding required medical testimony. On July 8, 2008, this Court found WCJ Kelley's findings on this issue were supported by substantial evidence and upheld the Board.[5] *Ann Wilson and James Wilson, Deceased v. Traveler's Insurance Company and Allied Signal, Inc.*, 2008 WL 9406439 (Pa.Cmwlth., Nos. 893 C.D. 2007, 989 C.D.2007, 2297 C.D.2007, 2298 C.D.2007, filed July 8, 2008).

Disputes arose concerning the precise amount of the judgment and Employer/Insurer's right to subrogation. Employer/Insurer eventually paid Mother the $517,000 award for past fatal claim benefits, plus penalties and attorney's fees, and began weekly fatal claim payments of $302.

On February 18, 2010, *while Mother was still living*, Employer/Insurer stopped paying the $302 weekly fatal benefits.[6]

On December 3, 2010, pursuant to Section 428 of the Act, 77 P.S. §§ 921 and 951, Attorney, Robert J. Murphy, Esquire, (Attorney) filed and served on Employer/Insurer, a Praecipe to the Prothonotary of the Montgomery County Court of Common Pleas at Civil Docket No. 2010–35625, to enter judgment for Claimant in the statutory amount of $30,000, which represented Employer/Insurer's default on the death benefits payable to Claimant.

Despite the fact that Claimant was not competent on her own to consent to any legal filings, and despite the fact that no

---

**5.** This consolidated action included: (1) Employer's appeals from the Board's order which affirmed the WCJ's grant of Father's Claim Petition and Mother's Fatal Claim Petition, and (2) Mother's appeals from the orders of the common pleas court which granted Employer's motion to open/strike judgment entered by Mother and granted Employer a special injunction which precluded Mother from executing on the judgment. At the time this Court issued its July 8, 2008 Decision, the controversy was in its 25th year of litigation.

**6.** Whether Employer/Insurer was entitled to stop making fatal claim benefits *to Mother* on February 18, 2010, is not before this Court. Evidently, that hotly disputed issue remains unresolved and is the subject of numerous overlapping and contradictory orders of the workers' compensation authorities and the common pleas court. The present controversy concerns only whether Employer/Insurer was required to continue making fatal claim benefit payments to Claimant after her Mother died in January 2012.

guardian *ad litem* was appointed[7] to represent Claimant's interests in this litigation, Attorney commenced the action by "Beth Wilson," in her own right, and captioned the action: *"Beth Wilson, Claimant v. Travelers Casualty and Surety Company and Honeywell, Inc."*

Mother died on January 5, 2012.

On April 30, 2012, Employer/Insurer filed a petition to vacate and strike the December 3, 2010 judgment and to preclude Claimant from executing on the judgment.

On July 10, 2012, the common pleas court heard argument on the petition to vacate and strike the judgment. Employer/Insurer argued that Claimant was not a member of the class of Father's dependents at the time of death; therefore, Claimant was not entitled to receive fatal benefits after her Mother died.

On July 24, 2012, Attorney filed a second, nearly identical, Praecipe to the Prothonotary at Civil Docket No. 2012–19984, seeking judgment in the statutory amount of $30,000 based on Employer/Insurer's *continuing and ongoing* default in fatal workers' compensation benefits.

On July 30, 2012, Employer/Insurer petitioned to vacate and satisfy the July 24, 2012 judgment and prohibit Claimant from executing on it. Employer/Insurer alleged that Claimant was not an established dependent of Father at the time of his death and, therefore, no right to benefits passed to Claimant upon her Mother's death. Employer/Insurer also alleged that the common pleas court lacked jurisdiction to decide whether Claimant was entitled to fatal workers' compensation benefits.

On August 17, 2012, the common pleas court heard oral argument. At oral argument, Employer/Insurer's counsel argued:

[COUNSEL FOR EMPLOYER/INSURER] MR. BRINDLE: In February of 2010 there was an interlocutory order issued by another Workers' Compensation judge that pending the remainder of the proceedings suspended any ongoing payment obligations to Anne Wilson [Mother]. That interlocutory order remained in effect throughout the remainder of the pendency of that litigation until on May 4th 2007 (sic-should be 2011) a final decision was rendered in the Workers' Compensation matter essentially upholding the interlocutory order. It suspended any obligation Traveler's [Insurer] had to pay Anne Wilson [Mother]. The only pay order that has ever been entered in this case is to Anne Wilson [Mother]. There's never been a pay order entered in the Workers' Compensation proceedings for Beth Wilson [Claimant]. And so when counsel ...

THE COURT: Did Beth Wilson [Claimant] have a Workmen's [sic] Compensation claim?

[COUNSEL FOR EMPLOYER/INSURER] MR. BRINDLE: Anne Wilson [Mother] was entitled to Workers' Compensation benefits as the dependent of James Wilson [Father] who had died as a result of a work-related exposure. Her obligation to receive those benefits has ended by judge decision dated May 4th of 2011 and the previous interlocutory order I mentioned. There's never been an order to pay Beth Wilson [Claimant] anything at any time in the Workers' Compensation proceedings.

---

**7.** Rule 2053 of the Pennsylvania Rules of Civil Procedure, Pa.R.C.P. No.2053, provides that: "[a] plaintiff who is an incapacitated person shall be represented by a guardian or by a guardian *ad litem* who shall supervise and control the conduct of the action in the plaintiff's behalf."

And so counsel indicates that it's statutorily authorized somehow. There's never been an order to pay Beth Wilson [Claimant] anything. The judgment has no basis under the Workers' Compensation claim whatsoever. She was not in a class entitled to take at the time of James Wilson's [Father] death and, therefore, there was no pay order entered for her, nor has there ever been a separate Workers' Compensation proceeding to establish a payment right to Beth Wilson [Claimant] by Travelers [Insurer].

Hearing Transcript, July 10, 2012, at 14–16; R.R. at 145a–147a.

On August 20, 2012, the common pleas court entered an order staying execution. On September 5, 2012, the common pleas court granted Employer/Insurer's petition to vacate the December 6, 2010 judgment and vacated and struck the judgment of December 6, 2012, with prejudice and further precluded Claimant from executing on said judgment throughout every county of the Commonwealth. On September 5, 2012, the common pleas court also entered an order vacating the second judgment entered on July 24, 2012. On December 17, 2012, the common pleas court filed two identical opinions in support of its final orders striking the judgments. The common pleas court concluded that Claimant was not entitled to fatal benefits stemming from the WCJ's May, 16, 2006 award to Mother because Claimant was not an established dependent of Father at the time he died and, therefore, no benefits would pass to Claimant upon Mother's death.

The common pleas court explained:[8]

The judgment in this case should be vacated because Plaintiff [Claimant] is not entitled to any benefits stemming from the May 15, 2006 workers' compensation award to her mother, Anne Wilson. Plaintiff [Claimant] was not an established dependent of her father James Wilson at the time he passed away and therefore no benefits would pass to Plaintiff [Claimant] upon her mother's death. The May 15, 2006, workers' compensation award does not establish an independent right of recovery for Plaintiff, Beth Wilson [Claimant].

Rather payments were awarded to the widow, i.e. Anne Wilson not to the widow and child. The child, Beth Wilson, [Claimant] was only relevant in order for the Board to determine the amount of money payable to the widow Anne Wilson [Mother].

That Anne Wilson [Mother] died in January of 2012 does not alter the fact that the Plaintiff, Beth Wilson [Claimant] was not in the class of people entitled to benefits at the time of James Wilson's [Father] death. Plaintiff [Claimant] was in a separate class from her mother and workers' compensation benefits may only pass to individuals within the same class. Since the Plaintiff [Claimant] was not entitled to benefits, the judgment entered must be vacated.

Common Pleas Court Opinion, December 17, 2012, at 1–2.

Claimant appealed both orders to our Pennsylvania Superior Court.

On April 1, 2013, over Claimant's objection, the Superior Court transferred the appeals to this Court because the related appeals involved Workers' Compensation proceedings.

8. Because the common pleas court's opinions were virtually identical this Court will only cite to one.

On appeal[9], Claimant argues that: (1) the Superior Court erred when it transferred the appeals to this Court; and (2) the common pleas court erred when it vacated Claimant's judgments.

## I.

Claimant argues that this Court does not have jurisdiction from the final order entered by the common pleas court. Claimant contends that the Superior Court has mutually exclusive appellate jurisdiction pursuant to 42 Pa.C.S. § 742 which provides:

> The Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, regardless of the nature of the controversy or the amount involved, except such classes of appeals as are by any provision of this chapter within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court.

This Court must disagree with Claimant. The Superior Court has authority pursuant to Pennsylvania Rule of Appellate Procedure 752(a) to transfer any appeal to the Commonwealth Court for consideration and decision with any matter pending in such other court involving the same or related questions of fact, law or discretion.

In *Franks v. Southeastern Transportation Authority (SEPTA)*, 435 Pa.Super. 262, 645 A.2d 851 (1994), our Superior Court transferred a matter to this Court which also involved the striking off of a judgment entered pursuant to a workers' compensation claim.

There, Robert Franks (Franks) filed a claim petition for injuries he sustained while being arrested at his job. The workers' compensation judge found that Franks' injuries were not related to his employment. This Court reversed the denial of benefits because SEPTA had failed to establish a connection between Franks' injuries and his violations of the law. *Franks*, 645 A.2d at 852. Subsequently, Franks entered a judgment against SEPTA based on this Court's order. SEPTA filed a motion to strike the judgment which the common pleas court ultimately denied.

SEPTA appealed to the Commonwealth Court which transferred the matter to the Superior Court. The Superior Court refused jurisdiction and transferred the matter back to the Commonwealth Court because: (1) the Commonwealth Court was still entertaining, on the merits, another related appeal filed by SEPTA; and (2) SEPTA's appeal from the common pleas court's order that refused to strike the judgment questioned the validity of the underlying judgment. The Superior Court explained the basis for its transfer to this Court:

> [W]e find jurisdiction does not lie with this Court. This case has bounced through the administrative agency hierarchy of litigation since 1987 and several well-reasoned memoranda have been penned by our learned colleagues in Commonwealth Court addressing issues peculiar to the Workers' Compensation Act; issues we are not in a position to address or challenge.
>
> \* \* \* \*
>
> This Court does not as a matter of course deal with the inner workings of the workers' compensation appeal procedure and is therefore not in a position to rule on the propriety of the decision

---

9. When a common pleas court strikes off a judgment it poses a question of law rendering this Court's review plenary. *Crystal Lake*

*Camps v. Alford*, 923 A.2d 482, 486 (Pa.Super.2007).

finding the original judgment to have been improvidently entered.

*Franks*, 645 A.2d at 852 (footnote omitted).

■ Here, there are related appeals still pending in this Court under Docket Nos. 855 C.D. 2011 and 661 C.D. 2011, which involve related questions of fact and law concerning the underlying fatal benefits award to Mother. Further, the issues raised in this appeal arise out of the ongoing workers' compensation proceedings involving the same parties' rights to fatal claim benefits and are directly related to the issues disposed of in this Court's Memorandum Decision *Ann Wilson and James Wilson, Deceased v. Traveler's Insurance Company and Allied Signal, Inc.*, 2008 WL 9406439 (Pa.Cmwlth., Nos. 893 C.D. 2007, 989 C.D.2007, 2297 C.D.2007, 2298 C.D.2007, filed July 8, 2008). The issues also involve this Court's review of the scope of WCJ Kelley's May 16, 2006, award of fatal claim benefits, and the interpretation of the scope of this Court's July 8, 2008, Decision and Order.

Finally, the underlying principles of workers' compensation law are traditionally within this Court's province. The appeal presents issues requiring this Court's special expertise in the interpretation, application and enforcement of Section 307(3) of the Act, 77 P.S. §§ 561, 562.

■ Accordingly, the Superior Court did not err when it transferred the appeals to this Court. This Court will not re-transfer the appeals to the Superior Court.[10]

## II.

Next, Claimant argues that the common pleas court erred when it struck the judgments on the grounds that Claimant had not been awarded fatal claim benefits after her Father's death.

■ Before this Court reaches this substantive issue, Employer/Insurer raises a preliminary issue concerning Attorney's legal authority to institute this action in the common pleas court against Employer/Insurer due to Claimant's diminished capaci-

10. Employer argues incorrectly that the common pleas court's orders striking the judgments entered pursuant to Section 428 of the Act, 77 P.S. § 921, constitute interlocutory orders from which an appeal as of right does not exist under Pa. R.A.P. 311(a)(1).

Initially, Employer is correct when it asserts that an order striking a judgment is generally not appealable. Unlike an order which *refuses* to strike a judgment, an order which strikes a judgment is not an interlocutory order from which an appeal as of right may lie under Pa. R.A.P. 311(a)(1). This is because an order which strikes a judgment (entered, for example, for non-pros, default, or by confession) does not end the litigation. Rather, it anticipates further litigation because it places the parties back in the position they were prior to the entry of judgment.

In this case, however, the judgments at issue were entered by Praecipe pursuant to Section 428 of the Act, 77 P.S. § 921, as the result of an adversarial proceeding and final award of fatal claim benefits payable to a surviving spouse with one dependent child. A judgment entered pursuant to Section 428 of the Act, 77 P.S. § 921, is best analogized to a verdict upon which judgment has been entered. 8 *West's Pennsylvania Practice, Workers' Compensation Law and Practice* (Third Edition), David B. Torrey and Andrew E. Greenberg, § 14:207 at 180. Such an order is a final order as defined in Pa. R.A.P. 341(b) and an appeal may be taken as of right. *See United Parcel Service v. Hohider*, 954 A.2d 13 (Pa.Super.2008) (common pleas court's order striking judgment entered by an employer against a claimant pursuant to Section 428 of the Act, 77 P.S. § 921, was appealable as of right because to proceed, employer would have been forced to file a new, separate civil action to enforce its right to subrogation). Here, the common pleas court essentially found there was no order which granted fatal claim benefits to Claimant. Claimant had no recourse in the court of common pleas other than to appeal the legality of that ruling.

ty. Employer/Insurer asserts that the judgments were properly stricken because Attorney lacked legal authority to institute an action on behalf of Claimant given that she was legally incompetent and had no legal guardian.[11]

It is undisputed that Claimant, who has Down's syndrome, is an "incapacitated person" under Section 5501 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S § 5501, and Rule 2051 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 2051. It is also undisputed that until Claimant's Mother died in January 2012, she served as guardian of Claimant's person and estate.

Employer/Insurer asserts that Mother's "Will" appointed Claimant's two sisters as guardians of Claimant's estate and person and contends that the Will has not yet been probated. Therefore, Claimant has no legal guardian.

Actually, assuming that Mother's Will may have not yet been probated and guardians of Claimant's "estate" and "person" may have not yet been appointed, this does not necessarily preclude an action from being commenced on behalf of an incapacitated person by a guardian *ad litem*. One of the purposes of appointing a guardian *ad litem* is to supervise and control the conduct of litigation under Rule 2056 of the Pennsylvania Rules of Civil Procedure because the incapacitated person has no guardian. The function of a guardian *ad litem* serves a different function than guardian of the "estate" or of the "person." The guardian *ad litem* represents an incapacitated person in a particular action, and his or her authority ends there.

Nonetheless, Employer/Insurer is ultimately correct because Claimant has no guardian, *ad litem* or otherwise. An action simply may not be brought by Claimant in her own right because she is an incapacitated person.

Because Claimant is an incapacitated person, under Rule 2056 of the Pennsylvania Rules of Civil Procedure the common pleas court was required to either: (1) appoint a guardian *ad litem*, or (2) stay all proceedings and enter an order directing that the plaintiff be represented in the action by a guardian within a reasonable time. Another option was for Attorney to file an Application for a Guardian *Ad Litem* under Rule 2059 of the Pennsylvania Rules of Civil Procedure.

However, there is a completely separate reason this Court must remand the matter. When this controversy is reduced to its simple parts, it basically comes to this: Claimant contends that she is owed fatal claim benefits because she was a dependent at the time her Father died, and upon her Mother's death she was entitled to receive the same benefits as if there were no surviving spouse under the provisions of Section 307(1) of the Act, 77 P.S. § 561(1). *Builders Exchange, Inc. v. Workmen's Compensation Appeal Bd.*, 64 Pa.Cmwlth. 94, 439 A.2d 215 (1982). Claimant also contends she had every right to Praecipe the Prothonotary of Montgomery County to enter judgment in her favor when Employer stopped, for whatever reason, making fatal claim payments to Mother on February 18, 2010.

Employer/Insurer, on the other hand, contends that: (1) it was entitled to stop fatal claim benefits altogether to Mother in February 2010;[12] and (2) as for Claimant's

---

11. This Court notes that this was not the reason the common pleas court struck the judgments. In fact, the common pleas court did not address this argument.

12. Employer/Insurer contends that even if Claimant had some derivative right to her Mother's award, payments to Mother were "suspended" by WCJ Joseph Hagan (WCJ Ha-

gan) after it was determined that Mother had obtained a third-party recovery from Owens–Illinois, which created subrogation rights to Employer/Insurer based on a lien of $566,849.00. Employer contends it was not obligated to continue to make fatal claim payments to *anyone* after February 18, 2010.

On September 29, 2008, Employer/Insurer sought to "modify or suspend" Mother's award and payment of "fatal claim" benefits under Section 319 of the Act, 77 P.S. § 671, at Bureau Claim No. 3240923 (consolidating Claim Nos. 609835 and 3240923). Employer/Insurer argued that it was entitled to a subrogation lien on the proceeds of the verdict in the "lifetime injuries" case against Owens–Illinois. Employer also requested supersedeas.

In response, Mother, as Administratrix of the Estate of James Wilson, and in her own right, filed an action against Owens–Illinois and Eric Kadish, Esquire (Attorney Kadish), in the common pleas court at Docket No. 2009–36677, seeking to enjoin Attorney Kadish and Owens–Illinois from breaching a confidentiality agreement and to enjoin the workers' compensation authorities from modifying or suspending Mother's award of "fatal claim benefits" based on the verdict for Father's and Mother's "lifetime injuries" against Owens–Illinois. It was Mother's position that the action which she and Father commenced against Owen–Illinois was for lifetime injuries and not for wrongful death. Therefore, the Employer/Insurer had no right to a subrogation lien (for fatal benefit payments in favor of Mother) on the proceeds of the verdict in the third-party case against Owens–Illinois.

On February 18, 2010, WCJ Patricia Bachman entered an "Interim/Interlocutory Order" at Bureau Claim No. 3240923 which granted Employer/Insurer's request for reconsideration of supersedeas and "stayed the payment of indemnity and counsel fees until a final disposition" was rendered. Thereafter, WCJ Patricia Bachman (WCJ Bachman) recused herself from the case.

On May 4, 2011, a different WCJ, Joseph Hagan, was assigned to the Suspension Petition pending at Bureau Claim No. 3240923. He entered a final order and concluded that Employer/Insurer *had* satisfied any obligation for payment of benefits and, further that such obligation to pay under WCJ Kelley's May 16, 2006, Decision was suspended, and benefits should be withheld until such time as the lien of Employer/Insurer was satisfied. WCJ Hagan found that Mother had withheld $566,849.00 in subrogation funds from Employer/Insurer. WCJ Hagan found that the Owens–Illinois verdict included damages for Father's death and that Employer/Insurer was entitled to satisfaction of a lien in the amount of $566,849.00, which represented all the amounts that it paid Mother for death benefits. Mother appealed and Employer/Insurer filed a cross-appeal from WCJ Hagan's order, both of which are currently pending before the Board and awaiting disposition. WCJ Hagan's May 4, 2011, Order, together with WCJ Bachman's February 18, 2010, Interlocutory/Interim Order, was the basis upon which the Employer/Insurer justified its cessation of fatal claim payments to Mother "as of February 18, 2010."

Meanwhile, on June 16, 2010, in the action commenced by Mother at Civil Docket No. 2009–36677 (seeking to restrain parties and counsel from divulging the confidential agreement in Owens–Illinois case) the common pleas court entered a "Consent Order" which reflected that Mother did not recover any proceeds from Owens–Illinois for any damages related to the death of Father. The common pleas court found that Mother was only entitled to fatal claim benefits under the Workers' Compensation Act and that Employer/Insurer had no subrogation rights as a result of the verdicts and satisfied judgment against Owens–Illinois. The common pleas court:

> [S]pecially and permanently prohibit[ed] and restrain[ed] Workers' Compensation Judge Bachman from maintaining, continuing, hearing, deciding and adjudicating all Workers' Compensation subrogation proceedings under Section 319 of the Workers' Compensation Act against plaintiff, Anne Wilson, Admx. of the Estate of James Wilson and Anne Wilson, in her own right and the deceased, James Wilson, pursuant to consolidated Workers' Compensation Bureau petitions to modify or suspend [fatal] compensation benefits at Bureau Claim Nos. 609835 and 3240923 based on the verdict and satisfied judgment in the personal injury action [against Owens–Illinois]....

Consent Order, January 10, 2010, at 3–6.

According to the Montgomery County Common Pleas Court Docket, this action is still ongoing in the common pleas court.

So, there appears to be pending contradicting, overlapping orders by WCJ Hagan and the common pleas court on the issue of whether Employer/Insurer is entitled to sub-

entitlement to benefits after Mother's death, Mother's death in January 2012, did not entitle Claimant to continue to receive fatal claim benefits independent of her Mother's award which ceased upon Mother's death. Employer/Insurer argues that Claimant was in a "separate class" of potential beneficiaries than her Mother ("surviving spouse" versus "child") and fatal claim benefits only pass to individuals in the "same class." Both positions are wrong.

First, this Court will address Employer/Insurer's argument.

■■ The intent of the Act is to grant dependency death benefits to dependent children of deceased employees for the purpose of providing some measure of the support that they would have received had their parent or legal guardian not died as a result of their work injuries. *Hertz Corp. v. Workers' Compensation Appeal Board (Johnson)*, 724 A.2d 395 (Pa.Cmwlth.1999).

Section 307 of the Act, 77 P.S. § 562, provides that "[c]ompensation shall be payable under this section to or on account of any child ... only if and while such child ... is under the age of eighteen *unless such child ... is dependent because of disability when compensation shall continue or be paid during such disability.*" (Emphasis added). Section 307 of the Act, 77 P.S. § 562, clearly provides further that:

If the compensation payable under this section to any person shall, for any cause, cease, the compensation to the remaining persons entitled hereunder shall thereafter be the same as would have been payable to them had they been the only persons entitled to compensation at the time of death of the deceased.

Contrary to Employer/Insurer's argument, this provision entitles Claimant to compensation when compensation to her Mother ceased. Claimant, like her Mother, was absolutely a dependent who was entitled to benefits based on her disability prior to her Mother's death. This has already been determined by this Court.

■ After her Mother's death, Claimant was entitled to receive some amount of fatal claim benefits, albeit not the total amount that her Mother was awarded (for a widow and one child). Under the Act, if a widow or widower receiving fatal claim benefits dies when there are still dependent children, benefits are then payable as if there were no spouse under the provisions of Section 307(1) of the Act, 77 P.S. § 561(1). *See Builders Exchange, Inc.* Under the clear language of the Act, Claimant is entitled the same compensation that would have been payable to her had she been the only person entitled to compensation at the time of death of Father. Under the Schedule of Payments to

rogation on the Owens–Illinois verdict and, therefore, was justified to stop paying fatal claim benefits to Mother on February 18, 2010. The workers' compensation authorities have taken the position, without the benefit of reviewing what counsel has identified as "confidential information," that Employer/Insurer *is* entitled to subrogation because the Owens–Illinois case involved damages for both Father's lifetime injuries and his death. The common pleas court, on the other hand, appears to have taken the opposite position, i.e., that the Owens–Illinois case dealt with

lifetime injuries and Mother's loss of consortium only, and not claims for Father's death. In any event, the question of whether Employer/Insurer justifiably stopped fatal claim benefit payments to Mother as of February 18, 2010, is anything but clear, and it is entirely unclear to this Court at this juncture which competing forum, the WCJ or the common pleas court, has jurisdiction to adjudicate Employer's subrogation rights. *See Romine v. Workers' Compensation Appeal Board (CNF, Inc./Potato Sack)*, 798 A.2d 852 (Pa.Cmwlth. 2002).

Beneficiaries under Section 307(1) of the Act, 77 P.S. § 561(1), if there is no widow entitled to compensation, one child is entitled to receive 32% of the deceased's wages, but not in excess of the Statewide average weekly wage.

Accordingly, Employer/Insurer was required to continue to pay fatal claim benefits to Claimant, Father's disabled daughter, after Mother's death in January 2012. Mother and Claimant were not different "classes" of beneficiaries.

■ Under the Act, whenever a surviving spouse dies and any dependent children remain eligible for benefits, the proper procedure is for the employer or insurance carrier and guardian and dependents to enter into a revised agreement to change the Award. 34 Pa.Code § 121.11 provides:

§ 121.11. Supplemental agreements for compensation for death.

(a) *A Supplemental Agreement for Compensation for Death, Form LIBC–339, may be used to change* an Agreement for Compensation for Death, Form LIBC–338, or *an award.* A Supplemental Agreement for Compensation for Death, Form LIBC–339, shall be completed before being signed by an employer and a deceased's dependents or personal representative. (Emphasis added).

(b) An Agreement for Compensation for Death, Form LIBC–338, shall be changed for any of the following reasons:

(1) Birth of a posthumous child.

(2) A change in dependent's status, including death.

(3) *A surviving spouse dies,* remarries or becomes capable of self-support *and any dependent children remain eligible for benefits.* (Emphasis added).

(c) The Bureau will presume that the surviving parent is guardian for purposes of receiving compensation under the act.

(d) The completed Supplemental Agreement for Compensation for Death, Form LIBC–339, shall be sent to all of the deceased's dependents or their personal representative and filed with the Bureau.

Upon Mother's death, the parties should have utilized this procedure to go back to the Bureau to recalculate the benefits Employer/Insurer owed Claimant. Any issue as to the amount of benefits Claimant was entitled to receive after her Mother's death was to be resolved by the Bureau.

■ With respect to Claimant's arguments that she was entitled to proceed under Section 428 of the Act, 77 P.S. § 921, in December of 2010, *while her Mother was living,* this Court notes that the procedure utilized by Attorney was in error. First, as pointed out above, Attorney erred when he filed the Praecipes for Judgments under Section 428 of the Act, 77 P.S. § 921, by Claimant "in her own right." Furthermore, when Employer/Insurer stopped making the fatal claim payments to Mother on February 18, 2010, (pursuant to WCJ Hagan's order) that sum was for one widow and one dependent child. This Court recognizes that Attorney was attempting to recover those fatal claim payments that were designated for Claimant's support only, notwithstanding the Employer's unresolved obligations to pay Mother.

At the time Attorney praeciped the Prothonotary of Montgomery County for entry of judgments in December 2010, Mother was still alive and the parties were embroiled in litigation concerning Employer/Insurer's right to subrogation against the proceeds Mother received from Owens Illinois. However, the "certified copy" of

WCJ Kelley's May 16, 2006, Award, and this Court's July 8, 2008, Order and Opinion, which Attorney attached to the Praecipe both as proof of Employer/Insurer's default, were captioned in *Mother's name*, as "the Claimant." The "Award" in Mother's favor could not have supported an entry of a default judgment for "Beth Wilson."

In this unusual situation, the better course was to first file with the WCJ a review petition pursuant to Section 426 of the Act, 77 P.S. § 871, to obtain clarification of Employer/Insurer's obligations and Claimant's rights under Judge Hagan's Award. *See Knouse v. Workers' Compensation Appeal Board (G.O.D., Inc.)*, 886 A.2d 329 (Pa.Cmwlth.2005). WCJ Hagan's May 4, 2011, decision ostensibly stayed *all* payments until Mother paid the subrogation lien. The question regarding Employer/Insurer's obligation to continue making partial payments to Mother *for Claimant's support only* pending the subrogation litigation was never brought up to the WCJ nor answered by the workers' compensation authorities. Until that decision was made, Attorney did not have a valid basis to Praecipe the common pleas court to enter judgment pursuant to Section 428 of the Act, 77 P.S. § 921, based on Employer/Insurer's default and violation of the Act.

The order of the common pleas court is affirmed to the extent that it vacated and struck off the judgments at issue and the matter is remanded. The parties are directed to proceed before the Bureau in accordance with the procedures outlined in this Opinion. Jurisdiction is relinquished.[13]

### ORDER

AND NOW, this 3rd day of December, 2013, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby affirmed to the extent that it struck off and vacated the judgments at issue and the matter is remanded. The parties are directed to conduct proceedings before the Bureau in accordance with those outlined in the foregoing opinion.

Jurisdiction relinquished.

---

13. Employer/Insurer also argues that Claimant and her counsel are prohibited from entering the May 16, 2006 award in any county of this Commonwealth pursuant to a continuing injunction entered by the Honorable Gary DeVito of the Philadelphia County Court of Common Pleas on September 12, 2007, at Philadelphia County Court of Common Pleas at Civil Docket No. 1135 May Term 2007. However, from what this Court is able to discern, the judgment referenced by Employer/Insurer is different from the judgments entered upon Claimant's Praecipes for ongoing default of weekly fatal claim benefits. The judgment at issue before Judge DeVito was for monies due and owing from the period between 1991 when the Fatal Claim Petition was filed and approximately May of 2007 at $302.40 per week.