**READING ANTHRACITE COMPANY,**
Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (FELEGI),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 26, 2001.

Decided Dec. 14, 2001.

Walter F. Kawalec, III, Philadelphia, for petitioner.

Stephen J. Bushinski, Ringtown, for respondent.

Before COLINS, Judge, McGINLEY, Judge, and NARICK, Senior Judge.

McGINLEY, Judge.

Reading Anthracite Company (Employer) seeks review of the order of the Workers' Compensation Appeal Board (Board) that affirmed the Workers' Compensation Judge's decision that granted Mary Felegi's (Claimant) fatal claim petition.

Michael Felegi (Decedent), Claimant's husband, had worked for Employer as a coal miner. Pursuant to a WCJ's decision dated May 13, 1980, Decedent received workers' compensation benefits of $176.75 per week after he contracted anthrasilicosis working as a coal miner in the anthracite mining industry of Pennsylvania. Decedent died April 24, 1997. The causes of death listed on his death certificate were pneumonia and anthrasilicosis. On May 30, 1997, Claimant petitioned for fatal claim benefits and alleged that Decedent died as a result of the anthrasilicosis.

Claimant testified that she married Decedent on September 27, 1947, was married to him until his death, and was not remarried. Notes of Testimony, July 31,

1997, (N.T.) at 6–7; Reproduced Record (R.R.) at 9a–10a. When Claimant's attorney sought to introduce Decedent's death certificate signed by Gurshuran Singh, M.D. (Dr. Singh), Employer's attorney objected. The WCJ admitted the certificate. N.T. at 10–11; R.R. at 13a–14a.[1]

Claimant presented the deposition testimony of John J. Mika, M.D. (Dr. Mika), board-eligible in family practice and Decedent's treating physician from 1963 until approximately three months before his death. Dr. Mika testified that he had diagnosed Decedent with anthrasilicosis[2] and emphysema as a result of working for forty years in the anthracite coal industry.

Deposition of John J. Mika, M.D., October 23, 1998, (Dr. Mika Deposition) at 13; R.R. at 48a. Dr. Mika testified within a reasonable degree of medical certainty that Decedent was more susceptible to contracting pneumonia than someone who had not suffered from anthrasilicosis and that anthrasilicosis was a contributing factor to his death.[3] Dr. Mika also testified that Decedent's "work history alone would justify his problems." Dr. Mika Deposition at 52; R.R. at 87a. Dr. Mika reiterated his belief that anthrasilicosis caused Decedent's death.[4] Dr. Mika stated that Dr. Singh was the director of medicine at the nursing home and was the last doctor to treat

---

1. The WCJ disqualified himself at the request of Employer because Claimant's attorney previously worked for the WCJ. The case was then assigned to another WCJ.

2. In the record, the disease is referred to as both anthrasilicosis and anthracosilicosis.

3. Claimant's attorney, Stephen J. Bushinski (Bushinski), questioned Dr. Mika about Decedent's death:

   Q: Do you have an opinion to a reasonable degree of medical certainty as to whether Mr. Felegi was more susceptible to contracting pneumonia than someone who did not suffer from the disease anthrasilicosis?
   A: Yes. People suffering from anthrasilicosis are very, very prone to pneumonia.
   Q: Do you have an idea why?
   A: Well, because their lungs are not functioning like yours or mine. And they already have foreign substances in the lungs, and infection starts very easily.
   Q: Doctor, Part I of the section entitled Immediate Cause also lists the words anthrasilicosis as the second of the two immediate causes listed in Mr. Felegi's death. Do you have an opinion to a reasonable degree of medical certainty, based upon your past treatment of Mr. Felegi to which you've already testified, your diagnostic tests, your physical examinations, as to whether the disease anthrasilicosis was a contributing factor in Michael Felegi's death?
   A: Yes, I feel it was a contributing factor in his death.

   Q: How exactly did it contribute to his death?
   A: The anthrasilicosis which he had for years predisposed him to acquiring the pneumonia which killed him.
   Dr. Mika Deposition at 24; R.R. at 59a.

4. Bushinski questioned Dr. Mika about his opinion:

   Q: Now, Doctor, after having reviewed the various documents that Mr. Scott [Employer's attorney] had introduced today, the discharge summaries, the X-ray from Dr. Peralta, and also keeping in mind that Mr. Scott's information indicates that Mr. Felegi had smoked more cigarettes per day than you had believed, do these does any of the information provided from these reports or Mr. Scott's information change your opinion as to whether Mr. Felegi had Mr. Felegi's pneumoconiosis or anthrasilicosis had been a contributing factor in his death?
   A: No, it does not.
   Q: You're not saying are you saying, Doctor, that pneumoconiosis or anthrasilicosis directly caused his death?
   A: Yes.
   Dr. Mika Deposition at 63; R.R. at 98a. Later, Bushinski asked the same question again:
   Q: All right. What role, if any, did anthrasilicosis play in Michael Felegi's death?
   A: A very significant role. Because of the anthrasilicosis, he developed a pneumonia.
   Dr. Mika Deposition at 72; R.R. at 107a.

Decedent. Dr. Mika Deposition at 57; R.R. at 92a. On cross-examination, Dr. Mika admitted that he did not treat Decedent in the last three months before his death and that the only reason he opined that Decedent died from pneumonia was because it was listed on the death certificate. Dr. Mika Deposition at 37–38; R.R. at 72a–73a.

Employer presented the deposition testimony of Thomas H. Dittman, M.D. (Dr. Dittman), board-certified in internal medicine. After a review of Decedent's medical records, Dr. Dittman testified within a reasonable degree of medical certainty that anthrasilicosis was not a significant contributing factor in any way to Decedent's death because Decedent's medical records revealed very severe cardiac disease and very severe renal disease which were not brought about by exposure to coal dust or anthracosilicosis. Deposition of Thomas H. Dittman, M.D., February 5, 1999, at 41; R.R. at 163a.

The WCJ granted Claimant's fatal claim petition and awarded her death benefits in the amount of $135.22 per week, $3,000.00 for burial expenses, ten percent interest on all past-due benefits and $956.82 in litigation costs to be paid by Employer. The WCJ made the following relevant findings of fact:

9. Claimant offered a certified copy of Decedent's death certificate. The certificate indicates that Decedent died on April 24, 1997, as a result of pneumonia and anthrasilicosis. The death certificate was signed by a medical doctor.

. . . .

12. The Workers' Compensation Judge finds the opinions of Dr. Mika to be credible, logical, internally consistent, and persuasive. The Workers' Compensation Judge notes that Dr. Mika treated Decedent for a substantial period of time, and testified that Decedent's breathing condition worsened significantly. The Workers' Compensation Judge notes Dr. Mika's credible testimony that pneumonia can develop over night, which is consistent with the death certificate which indicates that Decedent's pneumonia had occurred just days before his death. The Workers' Compensation Judge notes Dr. Mika's credible and unrefuted testimony that Dr. Singh, who signed the death certificate, is a medical director and is the Director of Medicine at the nursing home where Decedent died and was the last doctor who treated Decedent at that nursing home.

. . . .

15. The Workers' Compensation Judge finds the opinions of Dr. Dittman to be not persuasive. Underlying Dr. Dittman's testimony was an apparent belief that Decedent did not have anthracosilicosis. His opinion that Decedent did not die as a result of pneumonia ignored the certified death certificate signed by a physician and was based solely upon medical records, the last of which predated Decedent's death by almost a month, and all of which indicate chronic problems with shortness of breath, which was worsening. Dr. Dittman did not refute Dr. Mika's credible testimony that a fatal case of pneumonia could develop within twenty-four (24) hours.

16. The Workers' Compensation Judge finds that Decedent's anthracosilicosis was a substantial contributing factor to Decedent's death in that it predisposed him to developing pneumonia which was the immediate cause of death.

WCJ's Decision, August 5, 1999, Findings of Fact Nos. 9, 12, 15–16 at 3–4; R.R. at 218a–219a. Employer appealed to the Board which affirmed.

■ Employer contends that the Board erred when it affirmed the WCJ's decision because Dr. Mika did not testify that Decedent's occupational disease was a substantial contributing factor to Decedent's death and that Dr. Mika's causation testimony was essentially conjecture because the testimony of cause of death was the hearsay opinion of another physician.[5]

■ A claimant seeking to prevail on a claim petition bears the burden of proving all elements for an award. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993). In a fatal claim petition, the claimant must establish first that he/she is a widow or widower of the claimant. *Cyga v. Workmen's Compensation Appeal Board (Shade Mining Co.)*, 105 Pa. Cmwlth.544, 524 A.2d 1078 (1987).

> [W]here there are multiple causes of death and the immediate cause was noncompensable, the requirements of § 301(c)(2) [6] may be met by a showing with unequivocal medical evidence that the deceased suffered from an occupational disease and that it was a substantial, contributing factor among the secondary causes in bringing about death. Proving merely, ... that the disease was or may have been a contributing factor is inadequate.

*McCloskey v. Workmen's Compensation Appeal Board (J.H. France Refractories, Inc.)*, 501 Pa. 93, 101, 460 A.2d 237, 241 (1983). "With regard to the McCloskey standard, ... it is not a requirement that a medical expert, in order to establish causation, use the magical words of 'substantial contributing factor', rather, it is sufficient that a medical opinion express with reasonable certainty the standard set forth in McCloskey." *Bethlehem Mines Corp. v. Workmen's Compensation Appeal Board (James)*, 108 Pa.Cmwlth.68, 528 A.2d 1078, 1079 (1987). In conducting a review of the medical testimony, the medical witness's entire testimony must be taken as a whole and a final decision should not rest on a few words taken out of the entire testimony's context. *Lewis v. Commonwealth of Pennsylvania*, 508 Pa. 360, 498 A.2d 800 (1985).

Here, it is undisputed that Claimant was the widow of Decedent. It was also undisputed that Claimant suffered from an occupational disease, anthrasilicosis, and had received benefits since 1979. The question raised by Employer is whether Claimant established through Dr. Mika's testimony that anthrasilicosis was a substantial contributing factor in Decedent's death. A review of Dr. Mika's testimony indicates that while he did call the anthrasilicosis a contributing factor at one point of his testimony, he unequivocally stated his belief that the anthrasilicosis made Decedent more susceptible to pneumonia and was a significant causal factor in his death. *See* Dr. Mika Deposition at 24, 63; R.R. at 59a, 98a. Taken as a whole, Dr. Mika's testimony provides support for the WCJ's determination that Decedent's work-related anthrasilicosis was a substantial contributing factor in Decedent's death.

■ Employer also contends that Dr. Mika's opinion on the primary cause of death, pneumonia, was solely based on the death certificate which was improperly admitted hearsay evidence. Dr. Mika did

---

5. Our review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa.Cmwlth.15, 589 A.2d 291 (1991).

6. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(c)(2).

not treat Decedent in the last three to four months of his life. He did not prepare the death certificate. Gurshuran Singh, M.D. (Dr. Singh) signed the certificate. Therefore, Employer asserts that the death certificate was inadmissible hearsay to which its counsel timely objected.

Section 501 of the Vital Statistics Law of 1953(Law),[7] 35 P.S. § 450.501, provides that a certificate of death shall be filed within ninety-six hours for any death occurring in the Commonwealth.

This Court has previously addressed the use of death certificates in workers' compensation proceedings. *Hauck v. Workmen's Compensation Appeal Board (Kocher Coal Company)*, 47 Pa.Cmwlth.554, 408 A.2d 585 (1979). In *Hauck*, Dorothy M. Hauck (Mrs. Hauck) petitioned for fatal claim benefits and alleged that her late husband, Charles L. Hauck (Mr. Hauck), had died from anthracosilicosis contracted while employed in various anthracite mines in Pennsylvania. At hearing, Mrs. Hauck attempted to introduce a certified copy of Mr. Hauck's death certificate which stated that Mr. Hauck had died as a result of anthracosilicosis. The attorney for Kocher Coal Company objected to the certificate as hearsay. As a result, the certificate was admitted only to establish the date of death. The referee[8] found that Mrs. Hauck did not meet her burden and denied the petition. The Board affirmed. *Hauck*, 408 A.2d at 586. This Court determined:

> The weight of authority in Pennsylvania, however, is that a properly authenticated death certificate is generally admissible as proof, albeit not conclusive, of both the fact and the cause of death. . . . If, however, there is some reason to

suspect the trustworthiness of facts asserted in the certificate or the competency of its author, the certificate is not competent evidence of the facts in question. . . . Thus, in absence of any indication that the death certificate presented here is somehow untrustworthy, the referee erred in not admitting it as evidence of the cause of death. (Citations omitted).

*Hauck*, 408 A.2d at 587.

■ Employer argues that the death certificate is untrustworthy because there is no indication that Dr. Singh treated Decedent and was not a coroner. However, Employer ignores Dr. Mika's testimony that Dr. Singh was Decedent's treating physician at the nursing home where he died. The WCJ found Dr. Mika credible. The WCJ, as the ultimate finder of fact in workers' compensation cases, has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness in whole or in part. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 140 Pa.Cmwlth.461, 593 A.2d 921 , *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991). This Court will not disturb a WCJ's findings when those findings are supported by substantial evidence. *Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock)*, 667 A.2d 262 (Pa.Cmwlth. 1995). Further, Employer offers no support for the requirement that the individual signing the death certificate be a coroner in order to admit the certificate in a workers' compensation proceeding.[9]

Accordingly, we affirm.

---

7. Act of June 29, 1953, P.L. 304, *as amended.*

8. At the time WCJs were known as referees.

9. For support, Employer cites *Kondrat v. Workmen's Compensation Appeal Board (West-* *inghouse Electric Corp.)*, 145 Pa.Cmwlth.428, 603 A.2d 689, *petition for allowance of appeal denied*, 532 Pa. 648, 614 A.2d 1144 (1992). In *Kondrat*, however, Gloria Kondrat presented no medical testimony and attempted to

**ORDER**

AND NOW, this 14th day of December, 2001, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

introduce only a death certificate signed by a lay deputy coroner, not a doctor, to establish