Aqua America, Inc.,                 :
                Petitioner     :
                                 :
            v.             :
                                 :
Workers' Compensation Appeal  :
Board (Jermon Jeffers, deceased),  :   No. 1831 C.D. 2017
                Respondent   :   Argued: November 15, 2018

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge (P.)
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE COVEY                      FILED: December 4, 2018

Aqua America, Inc. (Employer) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) November 14, 2017 order affirming the Workers' Compensation Judge's (WCJ) decision granting Bernice Jeffers' (Claimant) Fatal Claim Petition filed on behalf of her deceased husband Jermon Jeffers (Decedent) and awarding their daughter Janice Jeffers (Janice) dependent benefits. Employer essentially presents one issue for this Court's review: whether the WCJ's finding that Janice had a disability was supported by substantial evidence.[1] After review, we vacate and remand.

On April 27, 2015, Decedent was fatally injured in a tractor-trailer accident that occurred while he was in the course and scope of his work for Employer. At that time of his death, Decedent was married to Claimant. Their daughter, Janice, who was then 17 years old, suffered from retinitis pigmentosa (RP),

---

[1] Employer presented two additional issues: (1) whether the Board erred in finding that the parties stipulated to Janice's dependency, and (2) whether the WCJ erred by placing the burden of proving Janice's dependency on Employer. *See* Employer Br. at 4. Because those issues are subsumed in this Court's discussion of the stated issue, they are combined herein.

an incurable, progressive eye disease that substantially impaired her peripheral vision.[2]

On May 7, 2015, Employer filed a Notice of Temporary Compensation Payable (NTCP) and began paying Claimant WC benefits.[3] On May 11, 2015, Claimant filed a Fatal Claim Petition (Petition) for death benefits, therein representing, *inter alia*: "Daughter, Janice [], is disabled and dependent, and compensation shall continue." Reproduced Record (R.R.) at 5a. In its answer to the Petition, Employer denied and demanded proof that "Janice [] is 'disabled and dependent' such that her 'compensation shall continue.'"[4] R.R. at 7a.

---

[2] The Jeffers had four children, only three of whom were minors on April 27, 2015: Janice (17), Jasmin (9) and Jameel (8). Initially, Employer challenged dependency claims made for Janice and Jasmin. However, Employer "abandon[ed] further appeals regarding Jasmin's claim." Claimant Br. at 6 n.1. Therefore, this appeal is limited to Janice's claim.

[3] The NTCP reflected, in pertinent part:

> In order to begin immediate payment of benefits to [Decedent's] family, [Employer is] filing a TNCP [sic]. Death benefits are not typically payable under a TNCP [sic], this will at least allow benefits to begin while [Employer] await[s] copies of [Claimant's] marriage certificate, her birth certificate, and the birth certificates of her four children. Once [Employer] receive[s] these required certificates[,] [it] will issue a Notice Stopping Temporary Compensation and fil[e] an Agreement for Compensation for Death.

Reproduced Record at 2a. Because Employer did not file an Agreement for Compensation for Death, Claimant filed the Fatal Claim Petition. *See* Claimant Br. at 3-4.

[4] Employer contends that the Board erred in finding that the parties stipulated to Janice's dependency at the August 18, 2015 WCJ hearing because "no such stipulation was ever rendered." Employer Br. at 9. The following exchange took place at the August 18, 2015 WCJ hearing:

> [Claimant's Counsel]: . . . . The oldest of the minor children is 17 turning 18 in March. So we want to make sure that her benefits would, our position, continue as the result of her disability. . . .
>
> [WCJ]: Okay.
>
> [Employer's Counsel]: Yeah, Judge, **from my understanding**[,] **the two children that they maintain will** be [sic] **remain dependent even after they become 18**. One at 17 who has an eye issue, blindness issue. . . . We're going to have to have her looked at.

WCJ hearings were conducted on August 18, 2015 and February 25 and April 19, 2016. On December 8, 2016, the WCJ granted the Petition "with respect to . . . Jani[ce's] . . . entitlement to dependency benefits" which "shall continue beyond the age of 18 until such time as Employer meets its burden of proving that [Janice is] capable of self-support."[5] R.R. at 138a (WCJ Dec. at 12). Employer appealed to the Board, which affirmed the WCJ's decision. Employer appealed to this Court.[6]

Initially, "[a] claimant seeking to prevail on a [fatal] claim petition bears the burden of proving all elements for an award." *Reading Anthracite Co. v. Workers' Comp. Appeal Bd. (Felegi)*, 789 A.2d 404, 408 (Pa. Cmwlth. 2001). Specifically, Section 307 of the WC Act (Act)[7] provides, in relevant part:

> **Compensation shall be payable** . . . **to or on account of any child** . . . **only if and while such child** . . . **is under the age of eighteen** *unless such child* . . . *is dependent because of disability* **when compensation shall continue or be paid during such disability of a child** . . . **over eighteen years of age** or unless such child is enrolled as a full-time student in any accredited educational institution when compensation shall continue until such student becomes twenty-three.

R.R. at 15a-16a. Later during that WCJ hearing, Employer's Counsel represented that they may be able to come to some agreement regarding Janice's claim, but he would not be sure until he received Janice's medical examination results. *See* R.R. at 32a. Based on this Court's record review, it is not clear that Employer stipulated to Janice's dependency. Moreover, if it had, there would be no basis for Employer's challenge on appeal. Notwithstanding, based upon our disposition of Employer's first issue, this issue is moot.

[5] Janice's birthday is March 15, 1998. *See* Claimant Br. at 4; *see also* R.R. at 23a. Janice turned 18 years old on March 15, 2016. She is currently 20 years old.

[6] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

[7] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

Section 307 of the Act was recognized as unconstitutional on other grounds by *Grimm by Grimm v. Workers' Compensation Appeal Board (Fed. Express Corp.)*, 176 A.3d 1045 (Pa. Cmwlth. 2018).

77 P.S. § 562 (bold and italic emphasis added).[8] Pursuant to Section 307 of the Act, a decedent's children are eligible for death benefits: (1) until they are 18 years old; (2) until they are 23 years old, if they are enrolled as full-time students in an accredited educational institution; or (3) they are over 18 years of age but dependent due to disability. *Hertz Corp. v. Workers' Comp. Appeal Bd. (Johnson)*, 724 A.2d 395 (Pa. Cmwlth. 1999). Thus, as a matter of law, Janice was entitled to dependent death benefits until she turned 18 years of age on March 15, 2016. Thereafter, in order for Janice to be eligible for such benefits, Claimant had to prove either Janice was a full-time student, or dependent because of a disability.

Employer argues that the WCJ's finding that Janice was disabled by her RP was not supported by substantial evidence. Specifically, Employer avers that Claimant "only proved that [Janice] has a diagnosis[,] but [] failed to prove an actual disability" that would justify continued dependent benefits for Janice after she turned 18, given that her vision remains largely intact and has not resulted in functional deficits. Employer Br. at 9.

"As with all claim petitions, the elements necessary to support [a fatal claim petition] award must be established by substantial evidence. Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy Prods.)*, 861 A.2d 938, 943 (Pa. 2004).

At the August 18, 2015 WCJ hearing, Claimant testified that Janice had vision problems during childhood, but was diagnosed with RP when she was 15 years old, approximately two years before Decedent's death. Claimant described that, over

---

[8] "The intent of the Act is to grant dependency death benefits to dependent children of deceased employees for the purpose of providing some measure of the support that they would have received had their parent or legal guardian not died as a result of their work injuries." *Wilson v. Travelers Cas. & Sur. Co.*, 88 A.3d 237, 248 (Pa. Cmwlth. 2013).

time, the RP has resulted in Janice losing her peripheral vision, and has caused her eyes to be slow to adjust from light to dark and dark to light environments. She related that, because Janice cannot see things around her, Claimant must guide Janice to keep her from bumping into things, falling down steps and getting hurt.

Claimant articulated that Janice was a senior at a public high school, and

[s]he's able to get around and everything by herself, but the doctor has been in touch with the school nurse that any of her teachers that have . . . the blinds open and things like that [sic] so she can see the board. Cause they use a lot of the white boards now instead of the chalkboard --

. . . .

and there's a glare and she cannot see if the lights are out.

R.R. at 26a-27a. Claimant reported that Janice is not involved in any other school activities.

Claimant recalled that Moore Eye Institute ophthalmologist and vitreoretinal surgeon Ravi D. Patel, M.D. (Dr. Patel) has been treating Janice for approximately one year as of the hearing date. She stated that Dr. Patel tests Janice every six months to determine whether the RP has worsened. Claimant explained that Janice must conduct weekly self-examinations to detect whether bleeding associated with peripheral vision loss (which would lead to permanent scarring) is occurring.

Claimant also presented Dr. Patel's December 29, 2015 deposition testimony that Janice has RP, which is a rare, hereditary genetic disease of the retina that limits peripheral vision. He described that, "the younger it presents, the more severe it is[,]" R.R. at 41a, being both aggressive and progressive. *See* R.R. at 42a, 53a. Dr. Patel expressed that Janice's condition is "a young presentation." R.R. at 41a. He explained that RP progressive "degeneration . . . starts peripherally and works its way centrally," R.R. at 41a, and will cause one's visual field to constrict

5

more and more to the point of tunnel vision, "and [then the] tunnel aperture over time gets smaller and smaller and smaller."[9]  R.R. at 42a.  Dr. Patel reported that total blindness from RP is rare, and that most people are "able to at least maintain a pinhole."[10]  R.R. at 42a; *see also* R.R. at 54a.

Dr. Patel further detailed that RP affects night vision, or dark adaptation, which is the adjustment between different lighting environments, explaining:

> So when you go from a very lighted area to a dark area, even though the patient has that central vision, when the lights are off, essentially [the patient has] no vision because of the rods being destroyed in [RP].  And the peripheral rods that we have in our retina help us with our night vision. If you don't have that, even though you're functional, your central retina is attacked, not having those peripheral rods comp[romises] your night vision and your central vision.

R.R. at 42a-43a.  He stated that it is difficult for individuals with this problem "to drive or to do any kind of really daily function without proper lighting."  R.R. at 43a.

Dr. Patel demonstrated that Janice's RP has severely restricted her visual field to the point where she has vision only just beyond the sides of her face, to about her shoulders (*i.e.*, a 20-degree visual field on each side).  *See* R.R. at 43a; *see also* R.R. at 68a-69a (Janice's test results).  He declared that, although Janice's testing over the past year did not change, a larger time sample is necessary because there is a "very high, if not certain correlation," R.R. at 53a, "given [Janice's] early presentation, [that] she . . . will have deterioration as she gets older[,]" although "how likely and how fast it is, [] is very difficult to determine."[11]  R.R. at 49a; *see also* R.R.

---

[9] Dr. Patel explained that he has never seen progressive RP stabilize, although he has read articles about mild RP cases where the visual field constriction is stationary and non-progressive. *See* R.R. at 53a.

[10] Dr. Patel reported that "less than 20 degrees of visual field" is legal blindness, and "the progressive, aggressive [RP] types generally do get to that area."  R.R. at 42a; *see also* R.R. at 54a.

[11] Dr. Patel stated that he could give a more definitive statement in five years.  *See* R.R. at 49a, 53a.

at 53a. He asserted that there is no cure for RP, no surgery that can better Janice's RP, and although visual rehabilitation therapy "can help with magnification for near work, [] it will never expand her visual field."[12] R.R. at 44a; *see also* R.R. at 55a. In his October 16, 2015 letter to Claimant's counsel, Dr. Patel classified Janice's long-term prognosis as "guarded." R.R. at 60a.

Dr. Patel pronounced that Janice cannot legally drive, and she is having difficulty seeing writing on whiteboards and overhead projectors at school if the lights are off. *See* R.R. at 50a.

> A. Because of their constricted vision field, she can't see where she steps when she looks down and especially in a darker environment when her functional central vision is compromised. So even though she has 40 degrees of total field, in a darker environment that diminishes.
>
> Q. So the vision that she does have is compromised by this difficulty in adjusting from light to dark or dark to light, in addition to the fact that she doesn't have a wide visual field?
>
> A. Correct.
>
> Q. So it's not as though her tunneled vision is perfect vision; it's still affected by the difficulties with light, dark and adjustment?
>
> A. Correct. Just because she's 20/30 doesn't mean she's 20/30 all the time. It gets compromised with different lighting environments. Especially, it gets severely compromised when she's in total darkness.
>
> Q. And going from indoors to outdoors, like from bright light to darker light?
>
> A. Yeah, it takes her time to adjust. It takes her about 90 seconds to 3 minutes to adjust. So that 20/30 acuity, that

---

[12] Dr. Patel testified that Janice's visual acuity is 20/30 bilaterally. She does not wear glasses because she does not have any refractive error that requires glasses and, even with a prescription, she is not going to see better than 20/30. *See* R.R. at 49a-50a. So, although limited in scope, what vision Janice has is clear.

7

> sharp acuity she may have centrally is always in flux based off of ambient light.
>
> Q. And when you say takes time to adjust, what is her vision like while it's adjusting?
>
> A. It's below 20/30. I mean, that is the hard place and difficult to say exactly what it is, but it's not 20/30.
>
> Q. And so it's greater compromised?
>
> A. Yeah, correct.

R.R. at 56a-57a. Dr. Patel concluded to a reasonable degree of medical certainty, based upon Janice's history and his August 14 and 28, 2014 and February 26 and August 17, 2015 examinations and testing, that "[Janice] is disabled[,]" and "she is not able to []support herself" as a result. R.R. at 44a; *see also* R.R. at 40a, 57a.

Employer offered the April 1, 2016 deposition testimony of ophthalmologist and oculoplastic surgeon Edward H. Bedrossian, Jr., M.D., F.A.C.S. (Dr. Bedrossian), who examined Janice at Employer's request on December 8, 2015.[13] Dr. Bedrossian's review of Janice's history, Dr. Patel's testing and his own testing confirmed that Janice's visual acuity is 20/30 bilaterally and she has RP with peripheral constriction and problems with dark adaptation, *see* R.R. at 90a, 95a, 102a, it is progressive, and "there's nothing, at least as of right now, that we can do that will slow the progression." R.R. at 91a; *see also* R.R. at 105a. Dr. Bedrossian acknowledged that RP is rare, and that "there's no way to predict whether it's going to stop. She can be the way she is now for the rest of her life or it can progress. There's really no way of knowing, so she needs surveillance[,]" every six months. R.R. at 92a; *see also* R.R. at 101a. However, he acknowledged that since Janice's RP presented at such a young age, her peripheral vision loss could eventually leave her

---

[13] Dr. Bedrossian is "not a retina specialist," but rather refers his patients to retinal specialists when necessary. R.R. at 77a. Specifically, he refers most RP patients to retinal specialists. *See* R.R. at 99a.

with only pinpoint vision. *See* R.R. at 103a-104a, 107a. Like Dr. Patel, in his independent medical report to Employer's counsel, he categorized Janice's prognosis as "guarded." R.R. at 126a.

Dr. Bedrossian observed Janice move around his examination room without assistive devices, and admitted Janice was "more comfortable with her mother helping guide her out through the doorways and to the office." R.R. at 96a. He stated that Janice could not drive, be on a ladder or safely play sports, but she can read and could do a job that did not require her to drive or use her peripheral vision. *See* R.R. at 98a. He agreed that peripheral vision loss and night vision problems add to an RP sufferer's difficulty conducting activities of daily living without someone to direct them, but stated that Janice's condition will not prevent her from attending college or working. *See* R.R. at 106a, 108a.

"A determination of dependency is a question of fact within the province of the [WC] authorities." *Grimm by Grimm v. Workers' Comp. Appeal Bd. (Fed. Express Corp.)*, 176 A.3d 1045, 1054 (Pa. Cmwlth. 2018). Further, "[t]he WCJ has exclusive authority to act as fact finder, determine credibility of witnesses, and weigh the evidence. The WCJ's findings will not be disturbed if they are supported by substantial, competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014) (citation omitted).

> 'Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party.' It does not matter if there is evidence in the record supporting findings contrary to those made by the WCJ; the pertinent inquiry is whether the evidence supports the WCJ's findings.

*3D Trucking Co., Inc., v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281, 1288 (Pa. Cmwlth. 2007) (citation omitted) (quoting

9

*Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison),* 819 A.2d 164, 168 (Pa. Cmwlth. 2003)).

The WCJ in this case made the following findings of fact:

8. Based upon a review of the evidentiary record as a whole, this [WCJ] accepts the testimony of [Claimant] in its entirety as credible and persuasive. Significant in reaching this determination is that [Claimant's] testimony is essentially uncontradicted, supported by the testimony of Dr. Patel . . . . Additionally, her testimony is based on her first[-]hand interactions with her daughter [Janice]. Also significant is this [WCJ's] observation of [Claimant's] demeanor while testifying and hearing her testimony first[-]hand.

9. Notably. Drs. Patel and Bedrossian essentially agree on the diagnosis of RP affecting [Janice's] peripheral vision and night vision. Dr. Bedrossian agrees that the difficulties with night vision, which is more than an inability to see at night but also issues with light and dark adaptation, add additional problems with performing activities of daily living. He also agrees that [Janice] cannot drive and has to be careful walking down steps.

10. Based upon a review of the evidentiary record as a whole, **the [WCJ] finds the testimony of Dr. Patel more credible and persuasive than any contrary testimony of Dr. Bedrossian**. Accordingly, the testimony of Dr. Bedrossian is rejected wherever inconsistent with the testimony of Dr. Patel and **the testimony of Dr. Patel is accepted as fact**. Significant in reaching this determination are the following:

a) Dr. Patel specializes in diseases of the retina and the vitreous, [he] completed a residency in ophthalmology and a vitreoretinal fellowship and performs retinal surgeries. While Dr. Bedrossian is board certified in ophthalmology, he specializes in ophthalmology and subspecializes in plastic reconstructive surgery and trauma. Dr. Bedrossian is not a retina specialist.

b) The medical analysis of Dr. Patel is clear, logical and well[-]supported. His testimony is based on the

10

examinations and testing performed and his expertise.

11. [Janice] has an aggressive and progressive form of [RP] which was diagnosed at the age of 16 in August of 2014 and detrimentally affects her peripheral vision and night vision which also includes light and dark adaptation. She has 20 degrees out of 90 degrees of peripheral vision on each side, with anything less than 20 degrees meeting the criteria for legal blindness. She cannot see at night, has problems with adapting to changes in lighting and her vision is compromised with different lighting changes. [Janice] had RP on the date of her father's death on [April 27, 2015] and will always have RP. It is incurable, will progress and nothing can slow the progression. RP adversely affects [Janice's] ability to perform activities of daily living. [Claimant] guides [Janice] when she goes out and after sunset because she cannot see what is around her. [Janice] is not self-supporting without assistance.

R.R. at 132a (WCJ Dec. at 6) (emphasis added). Based upon those factual findings, the WCJ concluded:

6. [Claimant] sustained her burden of proving that when Decedent . . . died[,] [Janice] was a minor and had a physical disability and was not capable of self-support.

7. Employer failed to sustain its burden of proving that [Janice] was capable of self-support after attaining the age of 18 and thus [Janice's] dependency benefits shall continue.[14]

R.R. at 136a (WCJ Dec. at 10). Accordingly, the WCJ granted the Petition, thereby granting Janice continuing dependent death benefits after she turned 18 years old. The Board agreed.

As a matter of law, Janice was entitled to disability death benefits until she was 18 years of age, on March 15, 2016. There is no record evidence that Janice

_____

[14] The WCJ erred by placing the burden of proving Janice's dependency on Employer at this stage. Claimant had the burden of proving Janice's eligibility for dependent benefits. *Reading Anthracite Co.*

11

was thereafter enrolled as a full-time student at an accredited educational institution. Thus, in order for Janice's disability death benefits to continue after her 18th birthday, Claimant had to establish that Janice was "dependent because of disability." 77 P.S. § 562.

> Regarding dependency, we acknowledge:
>
> No rigid rule can be laid down as to the amount or character of evidence necessary to show dependency, and each case must be controlled by its own circumstances. *Morris v. Yough Coal & Supply Co.,* . . . 109 A. 914 [(Pa. 1920)]. '**While dependency must be actual**[,] **it is not necessary that it be exclusive; it must be real but need not be total**. . . . Dependency does not mean sole and exclusive support. . . .' *Walker v. Aluminum* [*Co.*] of [*Am.*], . . . 138 A.2d 197 [(Pa. Super. 1958)].

*Walker v. Heavey*, 219 A.2d 466, 468 (Pa. Super. 1966) (emphasis added). Moreover, "support must be defined in the terms of the living standards and circumstances of life of the individual involved." *Id.* at 468.

Although the parties' medical experts agreed that Janice has a medically-diagnosed physical condition that has been and likely will continue to progress until she is legally blind and has affected some of her activities of daily living, Claimant did not offer substantial evidence that Janice was dependent after she turned 18 due to a "disability" as that term is used under the Act.

> This Court has ruled:
>
> To prove a disability, **the claimant must show not merely physical impairment, but loss of earning power**. *Coyne* [*v. Workers' Comp. Appeal Bd. (Villanova Univ.)*], 942 A.2d [939,] 945 n.7 [(Pa. Cmwlth. 2008)]; *Bissland v. Workmen's Comp*[.] *Appeal B*[*d.*] *(Boyertown Auto Body Works),* . . . 638 A.2d 493, 495 ([Pa. Cmwlth.] 1994); *Somerset Welding & Steel* [*v. Workmen's Comp. Appeal Bd. (Lee)*], 650 A.2d [114,] 119 n.9 [(Pa. Cmwlth. 1994)].

12

'[F]or the purposes of receiving [WC], 'disability' means loss of earning power, and thus although a claimant may suffer a . . . physical disability, **it is only if that physical disability occasions a loss of earnings that [an individual] will be 'disabled' under the meaning of the Act and will be entitled to receive compensation**.' *Bissland,* 638 A.2d at 495.

*BJ's Wholesale Club v. Workers' Comp. Appeal Bd. (Pearson)*, 43 A.3d 559, 562-63 (Pa. Cmwlth. 2012) (emphasis added).[15] Here, Claimant offered no evidence relative to whether and to what extent Janice's RP affected her earning power such that Janice was "dependent because of disability" after she turned 18 on March 15, 2016.[16] 77 P.S. § 562.

Based upon our review, drawing all reasonable inferences in Claimant's favor, as we must, we hold that credible record evidence supports the WCJ's conclusion that Janice has a physical impairment that continued beyond her 18th birthday and likely will progressively worsen. However, because there was not substantial evidence to support a conclusion that Janice's RP makes it impossible for her to earn an income, the Board erred in affirming the WCJ's conclusion that Janice is entitled to dependent death benefits after March 15, 2016.

---

[15] Although *BJ's Wholesale Club* and the cases relied upon therein involved injured workers rather than a deceased worker's dependent, it is nevertheless applicable here, where Section 307 of the Act used the term disability without modification from its use in the rest of the Act.

> In all matters involving statutory interpretation, we apply the Statutory Construction Act [of 1972 (Statutory Construction Act)], 1 Pa.C.S. §§ 1501[-1991], which directs us to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S. § 1921(a). To accomplish that goal, we interpret statutory language not in isolation, but with reference to the context in which it appears.

*Commonwealth v. Kingston*, 143 A.3d 917, 922 (Pa. 2016). Although the General Assembly could have defined disability in the specific context of Section 307 of the Act differently, it did not do so.

[16] Notably, two of the WCJ hearings took place before Janice's 18th birthday. The third hearing occurred just after her 18th birthday. Therefore, it is possible such evidence was not yet available.

13

Accordingly, the Board's order is vacated and the Board is directed to remand the matter to the WCJ for a hearing to determine the extent, if any, of Janice's earning power.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aqua America, Inc.,                                 :
                              Petitioner            :
                                                    :
              v.                                    :
                                                    :
Workers' Compensation Appeal                        :
Board (Jermon Jeffers, deceased),                   :    No. 1831 C.D. 2017
                              Respondent            :

## O R D E R

AND NOW, this 4th day of December, 2018, the Workers' Compensation Appeal Board's November 14, 2017 order is vacated, and the matter is remanded for proceedings consistent with this opinion.

Jurisdiction is relinquished.


_____
ANNE E. COVEY, Judge