Nancy Wiggins, :
                 Petitioner :
                 :
       v. :
                 :
Urban Outfitters, Inc. (Workers' :
Compensation Appeal Board), : No. 499 C.D. 2022
                 Respondent : Submitted: December 2, 2022

BEFORE:    HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                            FILED: February 22, 2023

Nancy Wiggins (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) May 3, 2022 order (Order) affirming the WC Judge's (WCJ) December 14, 2021 decision that granted in part and denied in part Claimant's Petition to Review Compensation Benefits (Review Petition), and granted Urban Outfitters, Inc.'s (Employer) Petition to Terminate Compensation Benefits (Termination Petition). Claimant presents three issues for this Court's review: (1) whether Employer's medical evidence constituted substantial evidence that supported the WCJ granting Employer's Termination Petition; (2) whether the Board erred by affirming the portion of the WCJ's decision wherein the WCJ directed Employer to pay a bill for medical services Claimant incurred after the termination of Claimant's WC benefits, rather than remanding to the WCJ for clarification; and (3) whether the Board erred by affirming the WCJ's

decision when it appeared to be missing a factual finding, rather than remanding to the WCJ for clarification. After review, this Court affirms.

Employer employed Claimant as a material handler/order picker. On July 12, 2019, Claimant sustained a left shoulder injury while stacking heavy boxes at work. Employer accepted Claimant's injury by issuing an Amended Notice of Compensation Payable and paid her WC benefits. Claimant initially treated with Employer's workers' compensation panel doctors who referred her for therapy, pain management, and, ultimately, to panel orthopedic surgeon Carl E. Becker, M.D. (Dr. Becker).

On August 21, 2019, Dr. Becker performed a left shoulder acromioplasty with extensive debridement of the biceps anchor tear on Claimant. Thereafter, Claimant attended physical therapy. In September 2019, a physical therapist stretched Claimant's left arm, after which Claimant experienced neck and bilateral arm pain. On October 2, 2019, Claimant again treated with Dr. Becker, who ordered a magnetic resonance imaging (MRI) of Claimant's left shoulder and neck. Dr. Becker referred Claimant to Dr. Sandusky[1] for pain management. Dr. Sandusky administered trigger point injections to Claimant's shoulder and an epidural injection to her neck. Because the injections were ineffective, Dr. Sandusky referred Claimant to neurologist Perry Argires, M.D. (Dr. Argires) in April 2020.

Claimant was initially seen by another physician in Dr. Argires' practice and by some of his physician's assistants. Dr. Argires' staff conducted a diagnostic workup before Dr. Argires personally examined Claimant. The staff updated Claimant's MRI on June 8, 2020. Claimant underwent a bone scan of her neck to rule out facet arthropathy, plus x-rays and upper extremity bilateral

---

[1] Dr. Sandusky's full name is not included in the certified record.

2

diagnostic studies.  Claimant had an electromyography study (EMG) on June 23, 2020.

On August 27, 2020, one year following her left shoulder surgery, Claimant presented to Dr. Becker with neck pain.  Dr. Becker took left shoulder x-rays which revealed that her shoulder was normal, and he administered a steroid injection into Claimant's left shoulder.  In his September 24, 2020 treatment records, Dr. Becker noted that Claimant had no relief from the steroid injection, but her shoulder was doing well.  Claimant had some myelopathy which Dr. Becker believed was coming from her neck.  Dr. Becker stated that he would order an MRI to see if Claimant's condition had worsened since the last MRI.

Dr. Argires first treated Claimant on November 11, 2020, chiefly for neck pain, and sent her for a bone scan on November 25, 2020, to help identify the source of her pain.  On December 15, 2020, Dr. Argires again examined Claimant for neck pain that she stated radiated to her left side.  The bone scan study results showed that Claimant had some mild facet arthropathy; therefore, Dr. Argires recommended nerve blocks.  Dr. Argires concluded that cervical surgery was not indicated for Claimant.  Dr. Argires did not see Claimant again after December 15, 2020.

On February 17, 2021, Dr. Becker conducted a follow-up evaluation of Claimant's left shoulder.   Dr. Becker ordered another steroid injection for Claimant's left shoulder and provided her with a note to return to work with restrictions.   On March 17, 2021, Dr. Becker saw Claimant for a follow-up evaluation for left shoulder pain, at which she reported that she had no relief from the injection and had persistent pain and soreness.  Accordingly, Dr. Becker recommended left shoulder AC joint excision surgery.  Dr. Becker also placed work restrictions on Claimant with no lifting over 10 pounds and no reaching above her head.

On July 1, 2020, John Petolillo, D.O. (Dr. Petolillo) performed an independent medical evaluation (IME) on Claimant. On August 3, 2020, Claimant filed the Review Petition alleging that she injured her neck, arms, and back while receiving physical therapy for her work-related left shoulder injury. Employer filed an Answer to the Review Petition denying the allegations. On August 11, 2020, Employer filed the Termination Petition alleging that, based on the IME, Claimant had fully recovered from her work injury as of July 1, 2020. Claimant filed an Answer to the Termination Petition denying that she had fully recovered. The parties offered Claimant's, Dr. Argires' and Dr. Petolillo's deposition transcripts, Dr. Petolillo's IME report, and Dr. Becker's medical records into evidence.

On December 14, 2021, the WCJ granted Claimant's Review Petition in part, finding that Claimant sustained a left shoulder strain with labral tear at work on July 12, 2019, and a cervical sprain during physical therapy in September 2019, but no other work-related injury. The WCJ also granted Employer's Termination Petition, finding that Claimant had fully recovered from her work-related left shoulder injury.

Claimant appealed to the Board contending that the WCJ's decision was legally erroneous, unsupported by substantial evidence, and not well reasoned. Claimant further asserted that a remand was warranted because the WCJ rendered inconsistent findings about Claimant's cervical sprain by finding that Claimant was fully recovered from her work injury by **July 1**, **2020**, but her **November 25**, **2020** bone scan was a treatment causally related to that work injury. Claimant argued that the WCJ's factual findings were incomplete because, although the WCJ's decision includes Findings of Fact (FOF) Nos. 7 and 9, it does not contain FOF No. 8. On

4

May 3, 2022, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[2]

Claimant contends that Employer's medical evidence did not constitute substantial evidence to support the Termination Petition. Specifically, Claimant asserts that the WCJ should not have credited Dr. Petolillo's testimony over Dr. Becker's testimony because Dr. Becker was Claimant's treating orthopedic surgeon and Employer's panel doctor, and Dr. Becker had recommended Claimant undergo additional surgery and continued work restrictions, whereas Dr. Petolillo examined Claimant only once during the IME.

This Court has explained:

> Section 422(a) of the [WC] Act[][3] . . . provides that a WCJ must render a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole, and must clearly and concisely explain the rationale for the decision so that parties to a [WC] action can understand the reasoning underlying a particular result. The WCJ must articulate an actual objective reason for his credibility determinations of witnesses other than those testifying in person at the hearing. An appellate tribunal may not imagine the reasons for a WCJ's credibility determinations.
>
> An adequate explanation for a determination is provided when the WCJ outlines the evidence considered, states [the] credible evidence relied upon, and establishes the reasons underlying the ultimate decision rendered.
>
> Further, **as the ultimate finder of fact and the sole authority for determining the weight and credibility of evidence**, **the WCJ may accept or reject the testimony of any witness in whole or in part**, **including medical**

[2] "[This Court's] review determines whether there has been a violation of constitutional rights, whether errors of law have been committed, whether [B]oard procedures were violated, or whether necessary findings of fact are supported by substantial evidence." *Bryn Mawr Landscaping Co. v. Workers' Comp. Appeal Bd. (Cruz-Tenorio)*, 219 A.3d 1244, 1252 n.5 (Pa. Cmwlth. 2019).

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.

5

**witnesses**.  *Lombardo v. Workers' Comp*[.] *Appeal B*[*d.*] *(Topps Co., Inc.)*, 698 A.2d 1378 (Pa. Cmwlth. 1997).  The WCJ's findings will not be disturbed if they are supported by substantial, competent evidence.[4]

*Hughes v. Wawa, Inc. (Workers' Comp. Appeal Bd.)*, 271 A.3d 922, 935-36 (Pa. Cmwlth. 2021) (emphasis added; some citations omitted).

> For purposes of appellate review, **it is irrelevant whether there is evidence to support contrary findings**; **if substantial evidence supports the WCJ's necessary findings**, **those findings will not be disturbed on appeal**. . . .    A court may overturn a credibility determination "only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render it irrational."  *Casne v. Workers' Comp*[.] *Appeal B*[*d.*] *(STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

*Verizon Pa., Inc. v. Workers' Comp. Appeal Bd. (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015) (emphasis added; some citations and footnote omitted).

Dr. Petolillo testified: "I felt [Claimant] was fully recovered from her injury consistent with a left shoulder strain with labral tear."  Reproduced Record (R.R.) at 110a.  Dr. Petolillo expounded:

> [R]eviewing the operative report[,] she had a type II [superior labrum from anterior to posterior (]SLAP[)] tear[,] which is a tear which generally does not need to be repaired.  It's debrided with an arthroscopic shaver.  Once that is achieved[,] essentially that condition no longer is a factor and there doesn't need to be any period of healing from the labral surgery itself other than the routine recovery from an arthroscopic shoulder surgery.
>
> So[,] based on that and the fact that she had met all of her physical therapy goals and was discharged as of December

---

[4] "Substantial evidence . . . [i]s such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *DiLaqua v. City of Phila. Fire Dep't (Workers' Comp. Appeal Bd.)*, 268 A.3d 1, 13 (Pa. Cmwlth. 2021) (quoting *Aqua Am., Inc. v. Workers' Comp. Appeal Bd. (Jeffers)*, 199 A.3d 482, 486 (Pa. Cmwlth. 2018)).

5, 2019, . . . it is my opinion she was fully recovered from her injury.

R.R. at 111a.

Further, Dr. Petolillo rejected Claimant's contention that she had sustained additional work-related injuries to her neck and back during physical therapy. Dr. Petolillo reasoned:

> [H]er cervical MRI [] showed age-appropriate changes with no focal disc herniation or other findings to suggest an acute cervical injury. The physical examination of her cervical spine was objectively normal. She had no subjective complaints to me regarding her lumbar spine nor did I review any diagnostic studies of the lumbar spine to suggest any spinal injury to the lumbar spine.

R.R. at 112a-113a. Dr. Petolillo declared that Claimant could return to her pre-injury material handler/order picker position without any restrictions. Dr. Petolillo also opined that, if Claimant had sustained the additional work-related neck and back injuries from physical therapy, she had recovered therefrom, explaining: "For her cervical spine[,] at most[,] it would have been a soft tissue cervical sprain perhaps, but again my physical examination was objectively normal. And I find her to be fully recovered from any cervical injury that she may have sustained." R.R. at 113a.

The WCJ determined relative to the parties' medical testimony:

> This [WCJ] has carefully reviewed the opinions of Dr. Becker, Dr. Argires, and Dr. Petolillo in conjunction with the other evidence of record, including Claimant's testimony. With regard to the onset of Claimant's neck pain in September of 2019, this [WCJ] finds the opinions of Dr. Becker and Dr. Argires to be credible in part that Claimant developed neck pain as a result of her left arm being stretched in physical therapy. Claimant's history of developing neck pain from her arm being stretched at physical therapy is documented by the October 4, 2019 cervical MRI report. Dr. Argires credibly testified Claimant's neck pain was definitely related to whatever happened at therapy. This [WCJ] further finds Dr.

7

Argires' testimony to be credible that the MRI studies, the EMG study, the bone scan, the thoracic x-rays, and the injections Claimant received are treatments related to what happened to her at physical therapy and, as such, are related to her work injury.

This [WCJ] accepts the opinion of Dr. Petolillo over the opinions of Dr. Argires and Dr. Becker with regard to the nature and extent of Claimant's neck injury. Dr. Petolillo credibly stated that if Claimant did sustain an injury during physical therapy, it was limited to a cervical sprain from which she fully recovered [] as of . . . July 1, 2020. This opinion is supported by the diagnostic studies taken after the stretch incident that failed to show any traumatic findings about the cervical spine, and only found age[]appropriate mild degenerative findings. The EMG also failed to show any radicular findings. Dr. Petolillo's diagnosis of a cervical sprain appears to be more consistent with Claimant's diagnostic studies.

R.R. at 183a.

As required, the WCJ "outline[d] the evidence considered, state[d] [the] credible evidence relied upon, and establishe[d] the reasons underlying the ultimate decision rendered." *Hughes*, 271 A.3d at 936. Consistent with his authority as the "ultimate finder of fact and the sole authority for determining the weight and credibility of evidence," the WCJ evaluated witness credibility and, where it conflicted, credited Dr. Petolillo's testimony that Claimant was fully recovered at the time he examined her. *Id*. Thus, notwithstanding that Dr. Becker was on Employer's panel, the Board correctly observed that "[i]t was the WCJ's prerogative to make that credibility determination and it cannot be disturbed on appeal." R.R. at 201a. Accordingly, this Court concludes that Dr. Petolillo's testimony and Claimant's medical records constitute substantial medical evidence supporting the WCJ's decision with respect to Employer's Termination Petition.

Claimant next asserts that the Board erred by affirming the WCJ's decision rather than remanding it to the WCJ for clarification, where the WCJ

8

ordered Employer to pay for Claimant's November 25, 2020 bone scan after terminating her WC benefits as of July 1, 2020. The WCJ held:

> Based on the evidence of record, this [WCJ] finds as fact that Claimant sustained a cervical sprain during physical therapy for her left shoulder injury in September of 2019. This [WCJ] finds as fact the **treatment for Claimant's neck up to July 1**, **2020**, *including* the cervical MRI studies, the EMG study, **the bone scan**, and the thoracic x-rays, the injections she received, and the medications for neck pain are causally related to the original left shoulder injury of July 12, 2019[,] given that her left arm was stretched during physical therapy for her left shoulder work injury producing neck pain.

R.R. at 184a (emphasis added).

> The Board considered and rejected Claimant's argument, reasoning:

> Claimant is correct that the WCJ found "the treatment for Claimant's neck up to July 1, 2020, including the cervical MRI studies, the EMG study, the bone scan, and the thoracic x-rays, the injections she received, and the medications for neck pain are causally related to the original left shoulder injury of July 12, 2019[,] given that her left arm was stretched during physical therapy for her left shoulder work injury producing neck pain." [R.R. at 184a] ([FOF] No. 13). Claimant is also correct that the bone scan did not take place until November 25, 2020, having been ordered by Dr. Argires in an effort to ascertain a cause for Claimant's ongoing symptoms. Claimant requests a remand, positing that "[i]t is unclear whether Claimant's condition recurred after July 1, 2020[,] necessitating the bone scan or why [the WCJ] would find the bone scan done on November 25, 2020[,] related to the injury in the face of his finding that Claimant had fully recovered as of July 1, 2020."[5] Based on our review of the WCJ's entire [d]ecision [] and the evidence, we conclude that the WCJ was clear about his findings that Claimant fully recovered from her work injuries by July 1, 2020, and that the medical treatment was causally related to the work injury up to that date. Therefore, the WCJ's

---

[5] The Board's Order does not cite a source for the quotation.

9

> inclusion of the November 2020 bone scan in the list of causally[-]related medical treatment was undoubtedly a mistake and we decline to remand for further explanation by the WCJ.

R.R. at 202a-203a.

Notably, the WCJ erroneously referenced "the treatment for Claimant's neck **up to July 1**, **2020**[,]" as "**including**" the bone scan. R.R. at 184a (emphasis added). Thus, contrary to Claimant's assertion, the WCJ's extensive analysis of the record evidence and well-reasoned decision may not be interpreted to conclude that Claimant's condition recurred after July 1, 2020. Consistent with the Board's Order, the inclusion of the November 25, 2020 bone scan in the WCJ's decision was simply a mistake. Accordingly, the Board correctly concluded that a remand was unnecessary.

Finally, Claimant contends that the Board erred by affirming the WCJ's decision rather than remanding to the WCJ for clarification, where the WCJ's decision appeared to be missing a factual finding. The Board acknowledged that the WCJ's decision skips from FOF No. 7 to FOF No. 9. However, "after thoroughly reviewing the [WCJ's d]ecision[,]" the Board determined that the existing findings "cover the evidence and issues presented, and correspond to the conclusions of law and the order page." R.R. at 203a. The Board further noted that there did not appear to be any missing content, and concluded that the factual findings were simply misnumbered.

This Court has also thoroughly reviewed the WCJ's decision. Consistent with the Board's characterization, despite that there is no FOF No. 8, the factual findings necessary to support the WCJ's decision are not missing. Similarly, Claimant has not suggested what necessary factual determination was missing. Accordingly, this Court agrees with the Board that the omitted FOF No. 8 was

10

simply a typographical error, and the Board did not err by affirming the WCJ's decision without remanding to the WCJ for clarification.

For all of the above reasons, the Board's Order is affirmed.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nancy Wiggins, :
               Petitioner :
                :
        v. :
                :
Urban Outfitters, Inc. (Workers' :
Compensation Appeal Board), : No. 499 C.D. 2022
               Respondent :

## O R D E R

AND NOW, this 22nd day of February, 2023, the Workers' Compensation Appeal Board's May 3, 2022 order is affirmed.

_____
ANNE E. COVEY, Judge