IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Tobin,                          :
                    Petitioner          :
                                        :
        v.                              :    No. 961 C.D. 2021
                                        :
Upper Darby Police Department           :
(Workers' Compensation Appeal           :
Board),                                 :
                    Respondent          :    Submitted: February 4, 2022


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                                          FILED: July 29, 2022


        William Tobin (Claimant) petitions this Court for review of the July 28, 2021,

Order of the Workers' Compensation Appeal Board (Board), which affirmed the

decision of a workers' compensation judge (WCJ), Kathleen DiLorenzo (WCJ

DiLorenzo), terminating Claimant's workers' compensation benefits. The issues

before this Court are whether the WCJ improperly disregarded the findings made in

an earlier proceeding by a different WCJ, Joseph Stokes (WCJ Stokes); whether

WCJ DiLorenzo's findings are supported by substantial and competent medical

evidence; and whether WCJ DiLorenzo failed to apply the correct standard for

terminating benefits under the Workers' Compensation Act (Act).[1] After careful

review, we affirm the Board.

_____

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

## I. Background

### A. First Termination Proceeding

Claimant sustained a work injury on June 13, 2012, while employed as a police officer for the Upper Darby Township Police Department (Employer). Certified Record (C.R.), Item No. 28, Stokes Decision, Finding of Fact (F.F.) Nos. 1-2. Employer accepted liability for the injury through issuance of a Notice of Compensation Payable (NCP), which described the work injury as a lumbosacral sprain and strain and a contusion of the right knee. *Id.*, F.F. Nos. 2-3. Based on the results of a January 31, 2013 independent medical examination (IME), Employer filed a petition to terminate Claimant's benefits, alleging he had fully recovered from his work injury. *Id.*, F.F. Nos. 4, 6. WCJ Stokes denied Employer's termination petition after concluding that Employer failed to meet its burden of proving that Claimant had fully recovered. *Id.*, Conclusion of Law (C.L.) No. 2. Employer appealed to the Board, which affirmed WCJ Stokes. C.R., Item No. 29.

### B. Second Termination Proceeding

Employer filed a second termination petition on June 2, 2016,[2] based on the results of IMEs conducted by Dennis McHugh, D.O., on March 17 and May 24, 2016, who opined that Claimant had fully recovered from his June 13, 2012 work injury. C.R., Item No. 2. Claimant denied Employer's allegations and filed a review petition on October 18, 2016, requesting an amendment to the description of his work injury, which Claimant alleged included more serious and disabling conditions. C.R., Item Nos. 4, 6.

In support of his review petition, Claimant testified live before WCJ DiLorenzo and presented the April 5, 2017 deposition testimony of his treating

---

[2] Employer also filed a request for supersedeas, which WCJ DiLorenzo denied in a July 19, 2016 interlocutory order. C.R., Item No. 5.

physician, James F. Bonner, M.D., as well as the transcript of Dr. Bonner's January 29, 2014 deposition testimony from the first termination proceeding before WCJ Stokes. Employer presented the deposition testimony of Dr. McHugh and Joseph Lubeck, D.O.

### 1. Claimant's Evidence

Claimant testified before WCJ DiLorenzo at a hearing held on July 13, 2016. C.R., Item No. 24. Claimant acknowledged that he suffered previous injuries to his right knee in 2007 and 2008, but he was able to return to his full-duty position in January 2008. *Id.*, Notes of Testimony (N.T.), 7/13/16, at 6-7. Claimant advised that he continues to experience weakness in his knees, difficulty lifting objects, an inability to stand or sit for long periods or to walk or run for long distances, difficulty sleeping, constant pain, stiffness in his lower back, and general discomfort. *Id.* at 10-13. In the six months prior to the July 13, 2016 hearing, Claimant treated his symptoms with spinal injections and physical therapy. *Id.* at 9. Claimant believed that his symptoms prevented him from performing the duties of a police officer. *Id.* at 14.

Dr. Bonner, who is board-certified in physical medicine and rehabilitation, testified that he first examined Claimant regarding the work injury on June 18, 2012. C.R., Item No. 33, Bonner Dep., 1/29/14, at 5, 7. At that time, Dr. Bonner diagnosed Claimant with a lumbosacral sprain and strain and a right knee contusion strain. *Id.* at 7-8. A July 2012 magnetic resonance imaging (MRI) study of Claimant's right knee confirmed the presence of effusion and a contusion. *Id.* at 8-9. Dr. Bonner next examined Claimant on January 16, 2013, at which time he determined that Claimant suffered from other conditions, consisting of degenerative changes, chronic and ongoing pain, an L4-L5 annular tear and a bulging disc that were

3

documented in a July 2012 MRI of Claimant's lumbar spine, and a herniated disc at L5-S1. *Id.* at 8. Dr. Bonner restricted Claimant from performing his full-time police duties, and prescribed Claimant medication and physical therapy. *Id.* at 10-11. Based on his findings with respect to Claimant's lumbar spine, Dr. Bonner also referred Claimant to a neurologist, who determined that Claimant's annular tear was consistent with an acute injury and a right-sided disc herniation. *Id.* at 9. Regarding Claimant's right knee condition, Dr. Bonner referred Claimant to an orthopedic surgeon, who treated Claimant's symptoms with injections. *Id.* Dr. Bonner disagreed with the opinions of Employer's medical expert, Mario Arena, M.D.,[3] that the abnormal findings on Claimant's MRIs were unrelated to his work injury. *Id.* at 13.

During a February 19, 2013 evaluation, Dr. Bonner noted that Claimant complained of pain with palpation along the spine, and Claimant had a positive result during the straight leg test on his right side. *Id.* at 14-15. Dr. Bonner opined that such findings signified a nerve root injury. *Id.* at 16. Claimant also complained of pain over the right knee, and he was unable to assume a squatting position. *Id.* at 15. Dr. Bonner treated Claimant's pain symptoms with physical therapy, pain medication, and steroid injections. *Id.* at 10, 17-18. Throughout the period he treated Claimant for his work injury, from June 13, 2012, through January 20, 2014, Dr. Bonner restricted Claimant from returning to his regular duties as a police officer. *Id.* at 19, 21. In April 2013, Claimant reported constant pain while sitting, standing, and walking for extended periods of time. *Id.* at 20. Based on Claimant's symptoms and the results of diagnostic studies, Dr. Bonner opined that Claimant had not fully

---

[3] Dr. Arena's deposition testimony from the first termination proceeding, which WCJ Stokes rejected as not credible, was not made part of the record in the instant matter. C.R., Item No. 28, WCJ Stokes Decision, F.F. No. 11.

4

recovered from his work injury and he "more likely than not" would be unable to return to unrestricted duty as a police officer. *Id.* at 23.

At his April 5, 2017 deposition, Dr. Bonner described Claimant's June 13, 2012 work injury as "consistent with an acute injury at both the L4-[L]5 and L5-S1 levels with a right-sided disc herniation at L5-S1 and a multiple-level lumbar radiculopathy," identified by means of electromyography (EMG) and nerve conduction studies, as well as aggravation of a preexisting degenerative condition in Claimant's right knee. C.R., Item No. 31, Bonner Dep., 4/5/17, at 7. Dr. Bonner treated Claimant's pain symptoms with lumbar spine injections and physical therapy. *Id.* at 8. Dr. Bonner's opinion had not changed from the date of his January 29, 2014 deposition that Claimant's physical condition prevented him from performing the essential duties of a police officer. *Id.* at 10-11.

At a March 7, 2017 evaluation, Claimant presented with continued low back pain and right knee complaints. *Id.* at 13. Dr. Bonner observed spasm in Claimant's lumbar spine and a positive finding in the straight leg test on Claimant's right side. Claimant also expressed tenderness in the right knee upon compression of the knee cap. *Id.* at 13-14. Dr. Bonner testified that his findings were consistent with those made in prior evaluations and in Claimant's diagnostic studies, as well as the records of Claimant's other treatment providers. *Id.* at 14. Dr. Bonner considered Claimant's condition permanent. *Id.* at 11.

Dr. Bonner disagreed with Employer's expert, Dr. McHugh, that Claimant's work injury was limited to a right knee contusion and lumbosacral sprain and strain, from which Claimant had fully recovered. *Id.* at 16, 19. Dr. Bonner acknowledged that the symptoms from a knee contusion would not have continued from June 13, 2012, to the present; however, he believed Claimant's continued right knee

5

symptoms related to "a significant aggravation of a preexisting degenerative condition[.]" *Id.* at 17-18. Regarding the condition of Claimant's lumbar spine, Dr. Bonner agreed that Claimant suffered a lumbosacral sprain and strain; however, Dr. Bonner also believed that Claimant's work injury also consisted of lumbar disc herniation with lumbar radiculopathy and annular tears. *Id.* at 20.

During cross-examination, Dr. Bonner agreed that he treated Claimant for right knee injuries he sustained prior to the June 13, 2012 work injury, and he conceded that an MRI report from 2007 revealed degenerative changes in Claimant's right knee. *Id.* at 28-29. A subsequent MRI from February 2011 also documented arthritic changes in Claimant's right knee. *Id.* at 30-31. Dr. Bonner conceded that Claimant's lumbar symptoms on July 9, 2012, consisted of "pain in the lumbar spine with decreased range of motion and a positive straight leg test." *Id.* at 40.

### 2. Employer's Evidence

Dr. McHugh, an orthopedic surgeon, testified at a January 25, 2017 deposition that he examined Claimant's right knee on March 17, 2016, and Claimant's lumbar spine on May 24, 2016. C.R., Item No. 40, McHugh Dep., 1/25/17, at 8, 16. Dr. McHugh noted that Claimant did not wear a brace or use any sort of assistive device, such as a cane. *Id.* at 11. Upon physical examination, Dr. McHugh observed that Claimant could fully extend his right knee, which was neutrally aligned and did not evidence instability. *Id.* Dr. McHugh did not detect any crepitus, increased fluid, or increased warmth or redness in Claimant's right knee. *Id.* Claimant experienced pain when Dr. McHugh pushed on his right kneecap, and on palpation of the medial femoral condyle, "where arthritis issues would be noted." *Id.* at 12. Claimant exhibited a normal gait and strength, and Dr. McHugh did not appreciate any limp. *Id.* at 12-13. While a July 12, 2012 MRI of Claimant's right knee revealed swelling

consistent with a knee contusion, Dr. McHugh found no evidence of swelling at the March 17, 2016 IME. *Id.* at 13-14. Overall, Dr. McHugh felt that the examination of Claimant's right knee was objectively benign, and he opined that Claimant had recovered from the right knee contusion sustained as a result of the June 13, 2012 work injury. *Id.* at 13. Accordingly, Dr. McHugh did not believe Claimant would be restricted in any capacity from resuming his full-duty position as a police officer. *Id.* at 14-15. Based on his review of Claimant's medical records, including diagnostic studies, and the March 17, 2016 IME, Dr. McHugh did not feel that Claimant's work injury included an aggravation of preexisting osteoarthritis. *Id.* at 15.

The results of Dr. McHugh's May 24, 2016 IME of Claimant's lumbar spine, which included a physical examination and review of Claimant's medical records, was likewise objectively normal. *Id.* at 21. Claimant expressed generalized and nonspecific pain over both sacroiliac joints; however, Dr. McHugh detected no palpable spasms in the muscles of Claimant's lower back and Claimant was able to extend his back without pain and bend forward 80 degrees at the waist. *Id.* at 18. "Side bending and rotation" were normal and painless, and Claimant had a normal straight leg test. *Id.* at 19. Claimant's strength at his hips, knees, and ankles was normal. *Id.* Claimant advised Dr. McHugh that he was not taking any prescribed or over-the-counter medications to treat his lower back symptoms. *Id.* at 17. Dr. McHugh opined that Claimant had fully recovered from his lumbosacral sprain and strain, and he could return to full-duty work without restriction. *Id.* at 21. Dr. McHugh disagreed with Dr. Bonner's opinion that Claimant's work injury included additional diagnoses, as Dr. McHugh found no evidence to support such an opinion. *Id.* at 24.

7

Dr. Lubeck, a board-certified electromyographer, reviewed Claimant's medical records and opined that those records did not support the additional diagnoses made by Dr. Bonner or corroborate Claimant's subjective symptoms. C.R., Item No. 42, Lubeck Dep., 4/26/17, at 10-13, 20, 22. Dr. Lubeck noted that a July 2014 EMG study did not specify which muscles were examined, and he considered the results of a July 2014 nerve conduction study to be normal. *Id.* at 17, 19. Dr. Lubeck observed that any abnormalities identified in Claimant's EMG study did not correlate with his clinical presentation, and an August 31, 2012 neurological examination of Claimant yielded normal results. *Id.* at 10, 22. Dr. Lubeck did not physically examine Claimant and he therefore had no opinion regarding Claimant's recovery from the June 13, 2012 work injury. *Id.* at 24.

### 3. WCJ DiLorenzo's Decision

WCJ DiLorenzo granted Employer's termination petition and denied Claimant's review petition. C.R., Item No. 9, DiLorenzo Decision at 19. WCJ DiLorenzo found Claimant credible with respect to the occurrence of the work injury, but she discredited Claimant's testimony as to the extent of his injuries. *Id.*, F.F. No. 4. Drs. McHugh and Lubeck were found more credible and persuasive than Dr. Bonner. *Id.* WCJ DiLorenzo reasoned that Dr. McHugh was better qualified than Dr. Bonner to diagnose orthopedic injuries and Dr. Lubeck had greater expertise in analyzing the EMG and nerve conduction studies that informed Dr. Bonner's opinions. *Id.* The opinions of Drs. McHugh and Lubeck were supported by the results of clinical examinations and the objective findings in Claimant's diagnostic studies, and both doctors provided rational explanations in support of their opinions. *Id.* Furthermore, Dr. McHugh's physical examinations were more thorough than

8

those described by Dr. Bonner, and Dr. McHugh conducted a more extensive review of Claimant's medical records. *Id.*

Based on these credibility determinations, WCJ DiLorenzo concluded that Employer met its burden of proving that Claimant had fully recovered from his June 13, 2012 work injury. *Id.*, C.L. No. 3. Regarding Claimant's review petition, WCJ DiLorenzo determined that Claimant was precluded from relitigating the description of his work injury by the doctrines of *res judicata* and collateral estoppel. *Id.*, C.L. No. 4. Claimant appealed to the Board, which affirmed. C.R., Item No. 12.

### 4. Commonwealth Court Appeal

Claimant appealed the Board's decision to this Court, arguing that WCJ DiLorenzo erred in concluding that his review petition was barred by *res judicata. See Tobin v. Workers' Comp. Appeal Bd. (Upper Darby Twp.)* (Pa. Cmwlth., No. 974 C.D. 2018), filed May 31, 2019 (*Tobin I*), slip op. at 7. Claimant also argued that WCJ DiLorenzo erred in granting Employer's termination petition because his work injury was "implicitly redefined" by WCJ Stokes' June 16, 2014 decision. *Id.* at 8.

We agreed with Claimant that WCJ DiLorenzo erred in concluding that Claimant was precluded from seeking an amendment to the description of his work injury, as that issue was never raised in the termination proceedings before WCJ Stokes. *Id.* at 11. In that matter, WCJ Stokes was only required to determine whether Claimant had fully recovered from his work injury. *Id.* When summarizing Dr. Bonner's January 29, 2014 deposition testimony, WCJ Stokes noted that Dr. Bonner identified the presence of an annular tear and herniated disc in an MRI of Claimant's lumbar spine. *Id.* WCJ Stokes did not, however, expand the description of Claimant's work injury when he credited Dr. Bonner's opinion that Claimant had

9

not fully recovered from his June 13, 2012 work injury. *Id.* As the description of Claimant's work injury had not been amended or clarified and, therefore, had never been litigated, we held that WCJ DiLorenzo erred in concluding that Claimant was precluded from pursuing his review petition. *Id.* at 12. Accordingly, we vacated the Board's order and remanded the matter to the Board with instructions that it remand the matter to WCJ DiLorenzo for a determination on the proper description of Claimant's work injury, followed by a new consideration of Employer's second termination petition. *Id.* at 12-13.

### 5. WCJ DiLorenzo's Remand Decision

Following remand, for which the parties did not present additional evidence, WCJ DiLorenzo reviewed the record and issued a decision denying Claimant's review petition and granting Employer's termination petition.[4] C.R., Item No. 19. WCJ DiLorenzo reiterated her prior credibility determinations, crediting Claimant's testimony as to the occurrence of his June 13, 2012 work injury, but rejecting his testimony regarding the extent of the work injury. *Id.*, F.F. No. 15. The qualifications of Drs. McHugh and Lubeck rendered their testimony more credible than that of Dr. Bonner, and they provided rational explanations for their opinions, which were supported by the results of clinical examinations and Claimant's medical records. *Id.*, F.F. No. 16.

WCJ DiLorenzo concluded that Claimant failed to establish his work injury encompassed the additional diagnoses identified by Dr. Bonner, and Employer met its burden of proving that Claimant had fully recovered from his work injury. *Id.*, C.L. Nos. 3-4. Based on Claimant's medical history, medical records, and Dr. McHugh's normal objective orthopedic findings and physical examinations, WCJ

---

[4] WCJ DiLorenzo granted Employer's second request for supersedeas, effective August 29, 2019. C.R., Item No. 19, F.F. No. 6.

10

DiLorenzo found that Claimant had recovered from his right knee contusion as of March 17, 2016, and from his lumbar sprain and strain as of May 24, 2016. *Id.*, F.F. No. 14(d), (j). Claimant appealed to the Board, which affirmed. C.R., Item No. 22. This appeal followed.[5]

## II. Issues

On appeal, Claimant argues that WCJ DiLorenzo improperly disregarded the findings made by WCJ Stokes in the first termination proceeding, that WCJ DiLorenzo's findings are not supported by substantial and competent medical evidence, and that WCJ DiLorenzo failed to apply the correct standard for terminating benefits under the Act.

## III. Discussion

It is well settled that the WCJ has exclusive authority to act as factfinder, determine the credibility of witnesses, and weigh the evidence, and the WCJ's findings will not be disturbed if they are supported by substantial, competent evidence. *Rogele, Inc. v. Workers' Comp. Appeal Bd. (Hall)*, 198 A.3d 1195, 1204 (Pa. Cmwlth. 2018). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Aqua Am., Inc. v. Workers' Comp. Appeal Bd. (Jeffers)*, 199 A.3d 482, 486 (Pa. Cmwlth. 2018). It does not matter if there is evidence in the record supporting findings contrary to those made by the WCJ; the pertinent inquiry is whether there is any evidence to support the findings actually made. *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003).

---

[5] Our standard of review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Lehigh Specialty Melting, Inc. v. Workers' Comp. Appeal Bd. (Bosco)*, 260 A.3d 1053, 1058 n.3 (Pa. Cmwlth. 2021).

11

First, we address whether WCJ DiLorenzo erred in terminating Claimant's benefits because she disregarded findings of fact made by WCJ Stokes in the first termination proceeding. Specifically, Claimant contends that the only logical way to read WCJ Stokes' decision in the first termination proceeding is that, by crediting Dr. Bonner's opinion that Claimant also suffered an L4-L5 annular tear and bulging disc, and a herniated disc at L5-S1, WCJ Stokes implicitly amended the NCP to include those diagnoses. Claimant relies on *Westmoreland County v. Workers' Compensation Appeal Board (Fuller)*, 942 A.2d 213 (Pa. Cmwlth. 2008), in which this Court held that a WCJ implicitly amended an NCP after denying an employer's termination petition based on additional injuries that were not accepted in the NCP.

We reject Claimant's argument here, having done so previously in *Tobin I.* As we noted in that decision, WCJ Stokes only referenced Claimant's additional diagnoses when summarizing Dr. Bonner's testimony. In rendering his credibility determinations, WCJ Stokes found Dr. Bonner "credible and convincing that Claimant remains disabled from employment as it relates to" the June 13, 2012 work injury. C.R., Item No. 28, Stokes Decision, F.F. No. 10. By crediting Dr. Bonner's testimony, the WCJ did not thereby "adopt any other definition of the work-related injury." *Tobin I*, slip op. at 5.

Next, we address whether WCJ DiLorenzo ignored substantial, competent evidence that Claimant sustained more extensive injuries than those listed on the NCP. Despite having found that Claimant's diagnostic studies documented annular tears at L4-L5 and L5-S1, a disc protrusion at L5-S1, and multi-level lumbar radiculopathy, WCJ DiLorenzo ultimately concluded that Claimant's work injury to his lumbar spine was limited to a sprain and strain. Claimant also argues that WCJ DiLorenzo failed to explain her reasoning for this finding.

12

We disagree, as Dr. McHugh credibly testified that the swelling identified in a July 12, 2012 MRI of Claimant's right knee was no longer evident at the March 17, 2016 IME, and Claimant's physical examination was "benign from an objective standpoint." C.R., Item No. 40, McHugh Dep., 1/25/17, at 13. As a result, Dr. McHugh opined that Claimant had fully recovered from the right knee contusion he sustained from the June 13, 2012 work injury. *Id.* at 14. Further, Dr. McHugh's examination did not reveal any findings to suggest he suffered an aggravation of preexisting osteoarthritis in his right knee. *Id.* at 15. During his physical examination of Claimant's lumbar spine, Dr. McHugh observed no spasm and Claimant could extend his back without pain. *Id.* at 18. Claimant's straight leg test yielded normal results, and Claimant's strength and sensation were normal. *Id.* at 19. While Claimant expressed some pain during the examination, Dr. McHugh stated that it was generalized and non-specific. *Id.* at 18. Therefore, Dr. McHugh opined that Claimant had fully recovered from the lumbar sprain and strain sustained in the June 13, 2012 work injury. *Id.* at 20. Dr. McHugh found no evidence that Claimant's work injury caused the additional conditions identified by Dr. Bonner. *Id.* at 24. WCJ DiLorenzo also credited the testimony of Dr. Lubeck that the findings from Claimant's nerve conduction study were within normal limits, and any abnormalities identified in Claimant's EMG study did not correlate with his clinical presentation. C.R., Item No. 42, Lubeck Dep., 4/26/17, at 21-22.

Based on the foregoing credited testimony, substantial evidence supports WCJ DiLorenzo's finding that Claimant's June 13, 2012 work injury was limited to a lumbar sprain and strain and a right knee contusion.

Furthermore, WCJ DiLorenzo fully explained her credibility determinations, reasoning that Dr. McHugh was better qualified than Dr. Bonner to diagnose

13

orthopedic injuries and Dr. Lubeck had greater expertise in analyzing the EMG and nerve conduction studies that formed the basis for Dr. Bonner's opinions. C.R., Item No. 19, DiLorenzo Decision, 10/26/20, F.F. No. 16. The opinions expressed by Drs. McHugh and Lubeck were supported by the results of clinical examinations and the objective findings in Claimant's diagnostic studies, and both doctors provided rational explanations in support of their opinions. *Id.* Furthermore, Dr. McHugh's physical examinations were more thorough than those described by Dr. Bonner, and Dr. McHugh conducted a more extensive review of Claimant's medical records. *Id.*

As noted above, the WCJ has exclusive authority to act as factfinder, to determine the credibility of witnesses, and to weigh the evidence. This Court's focus is on whether there is any evidence to support the findings made by WCJ DiLorenzo, not whether the evidence supports the findings Claimant believes she should have made.

Finally, we address whether WCJ DiLorenzo applied the incorrect legal standard in granting Employer's second termination petition. Claimant argues that there is no evidence demonstrating a change in his work-related condition from the date of WCJ Stokes' decision denying Employer's first termination petition, as required by *Lewis v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.)*, 919 A.2d 922 (Pa. 2007).

In *Lewis,* our Supreme Court held that, to terminate workers' compensation benefits on the basis that a claimant's disability has decreased, an employer "must show a change in physical condition since the preceding disability adjudication." *Lewis*, 919 A.2d at 926. It is not sufficient for an employer to merely challenge the diagnosis of a claimant's injuries as determined in a prior proceeding. *Id.* at 928. Rather, the employer must accept the claimant's prior adjudicated condition and

14

work forward in time to show full recovery at a later date. *Folmer v. Workers' Comp. Appeal Bd. (Swift Transp.)*, 958 A.2d 1137, 1143-44 (Pa. Cmwlth. 2008). A simple finding that the claimant has fully recovered is insufficient. *Delaware Cnty. v. Workers' Comp. Appeal Bd. (Browne)*, 964 A.2d 29, 36 (Pa. Cmwlth. 2008). There must be a factual finding that the claimant's physical condition changed from the time of the last disability adjudication. *Id*.

Instantly, Claimant suggests that WCJ DiLorenzo's decision failed to "address the entire work-related diagnosis[,]" which we presume references Dr. Bonner's additional diagnoses that WCJ DiLorenzo found were not related to Claimant's work injury. Given our conclusions on the first two issues, Employer was only required to demonstrate a change in Claimant's condition regarding his lumbosacral sprain and strain and right knee contusion as of June 17, 2014, the date WCJ Stokes denied Employer's first termination petition.

In the first termination proceeding, WCJ Stokes credited Dr. Bonner's testimony that, as of January 20, 2014, the condition of Claimant's right knee and lumbar spine had not changed throughout his treatment. Claimant had a positive straight leg test and continued to take prescription medication to treat his symptoms. WCJ Stokes also credited Claimant's testimony that he continued to suffer symptoms related to his right knee contusion and lumbar sprain and strain.

In the second termination proceeding before WCJ DiLorenzo, Dr. McHugh credibly testified that the March 17, 2016 IME of Claimant's right knee was "benign from an objective standpoint." C.R., Item No. 40, McHugh Dep., 1/26/17, at 13. Dr. McHugh did not detect any crepitus, increased fluid or swelling, or increased warmth or redness in Claimant's right knee. Claimant did not walk with an assistive device, and he exhibited a normal gait and strength. While Claimant expressed pain

15

when Dr. McHugh pushed on his right kneecap, and on palpation of the medial femoral condyle, Dr. McHugh indicated that such pain was localized to an area of the knee "where arthritis issues would be noted." *Id.* at 12. While WCJ DiLorenzo credited Dr. McHugh's testimony over Dr. Bonner's, it is noteworthy that Dr. Bonner conceded that the symptoms from a right knee contusion would not have continued from the date of the work injury to the present. Dr. McHugh's May 24, 2016 examination of Claimant's lumbar spine was also objectively normal, as Dr. McHugh detected no palpable spasms in the muscles of Claimant's lower back and Claimant's straight leg test was normal. Further, Claimant could extend his back without pain, bend forward 80 degrees at the waist, and his side-bending and rotation were normal and painless. Claimant's strength and sensation were normal. Claimant advised Dr. McHugh that he no longer took prescription or over-the-counter medication to treat his lumbar symptoms.

Based on the above, we conclude that the record demonstrates the requisite change in Claimant's condition from the date WCJ Stokes denied the first termination petition, and WCJ DiLorenzo did not err in granting Employer's second termination petition. Accordingly, we affirm the Board.

## IV. Conclusion

In granting Employer's second termination petition, WCJ DiLorenzo did not disregard the findings of WCJ Stokes, who did not implicitly expand the description of Claimant's June 13, 2012 work injury to include diagnoses not contained in the NCP. WCJ DiLorenzo did not err in granting Employer's second termination petition, as substantial evidence supports her findings that Claimant's work injury consisted of a right knee contusion and a lumbosacral sprain and strain, and that Claimant had fully recovered from those conditions. Finally, Employer presented

16

evidence that sufficiently demonstrated a change in Claimant's physical condition from the date that WCJ Stokes denied Employer's first termination petition. As a result, the Board did not err in affirming WCJ DiLorenzo's October 26, 2020 decision granting Employer's second termination petition, and we affirm the Board.

_____
ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Tobin, : 
                Petitioner : 
                 : 
        v. : No. 961 C.D. 2021
                 : 
Upper Darby Police Department : 
(Workers' Compensation Appeal : 
Board), : 
                Respondent : 

**O R D E R**

AND NOW, this 29th day of July, 2022, the July 28, 2021 order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby AFFIRMED.

                                     _____

                                     ELLEN CEISLER, Judge